■ SAMUEL P. HOOPES et al., Individually and as Trustees of the Trusts Made by CHARLOTTE P. HYDE et al., Respondents, v RICHARD J. CAROTA, Individually and as Trustee of the Trusts Made by CHARLOTTE P. HYDE et al., Appellant.—Levine, J.

Appeal from an order of the Supreme Court (Dier, J.), entered April 10, 1987 in Warren County, which granted plaintiffs' motion to, *inter alia,* compel defendant's response to an examination before trial.

Plaintiffs are either present income beneficiaries and presumptive remaindermen or contingent income beneficiaries and contingent remaindermen of three trusts set up in 1954 to hold and administer a majority of the voting stock of Finch, Pruyn & Co., Inc. (hereinafter the corporation), a large paper manufacturer located in the City of Glens Falls, Warren County. They are heirs of the founding family of the corporation. This action is one of a series of legal disputes among trustees, those having present or future beneficial interests in the trusts and the managing officers of the corporation *(see, Renz v Beeman,* 589 F2d 735, *cert denied* 444 US 834; *Hoopes v Bruno,* 128 AD2d 991; *Matter of Beeman,* 108 AD2d 1010). The first of these litigations *(Renz v Beeman, supra)* was resolved by a 1981 settlement agreement in which the number of trustees of all three trusts was expanded to five, consisting at the time of three trustees from the family branches of the original owners and two trustees from management. Defendant, as chief executive officer of the corporation and member of its board of directors, was named as one of such trustees. In 1982, following the resignation of one of the family trustees, Peter J. Bruno, a corporate officer and nonfamily member, was named as a successor. Thus, corporate management assumed voting control over the trusts and, with it, of the corporation *(see, Hoopes v Bruno, supra).*

This action was commenced in 1986 to remove defendant as trustee. The gravamen of the complaint is that defendant violated his trust by self-dealing and other misconduct in which he acted with a conflict of interest, both as trustee and as chief executive officer and a director of the corporation, all of which was inimical to the interests of the trust beneficiaries. This conduct was specifically alleged to have related to defendant's (1) proposing and obtaining board of directors' approval of salary increases for himself and Bruno, almost doubling their annual remuneration in the space of three years, (2) obtaining similar approval of long-term employment contracts for various corporate officers which would protect and reward them financially in the event of the corporation's acquisition by outside companies, and (3) handling of various alternative proposals for outright outsider acquisition of the corporation or a leveraged buyout of it participated in by present corporate management, in all of which defendant

allegedly discouraged consideration of merger possibilities which would have been favorable to stockholders but less favorable to management.

Following joinder of issue, plaintiffs noticed defendant for an examination before trial (EBT). At the EBT, defendant, upon the advice of counsel, refused to answer a series of questions on the grounds of lack of relevance and that they were barred by the attorney-client privilege (see, CPLR 4503 [a]). Plaintiffs moved before Supreme Court to compel disclosure, and defendant appeals from the order granting their motion.

Defendant has limited his appeal to Supreme Court's overruling of his invocation of the attorney-client privilege to questions at the EBT. Preliminarily, plaintiffs urge that, since this issue involves the scope of pretrial discovery, the order was not appealable as of right and, since defendant did not seek permission to appeal, the appeal should be dismissed (see, Matter of Beeman, supra, at 1011). Although it is highly arguable that an order overruling a claim of statutory privilege "affects a substantial right" (CPLR 5701 [a] [2] [v]) and is, therefore, directly appealable even in the context of discovery proceedings, we need not resolve the question of the appealability of Supreme Court's order. The issue raised in this appeal is of sufficient novelty and importance in this likely protracted litigation to merit treating defendant's briefs as an application for leave to appeal, and we hereby grant permission (see, CPLR 5701 [c]; Hughson v St. Francis Hosp., 93 AD2d 491, 495).

Turning to the merits, defendant refused to answer questions as to (1) whether he consulted his present attorneys regarding his participation, as a trustee, in a proposed leveraged buyout and as to his communications to his attorneys and their advice on that subject, (2) whether he sought such advice individually or as a trustee, (3) any legal opinions he sought, either as an individual or a trustee, on any trust or corporate matters, (4) whether he sought legal advice as to any proposed sale, merger or acquisition of the corporation, and (5) the arrangements for paying his legal fees in this action or Bruno's legal fees in the parallel action by plaintiffs to remove him as a trustee (see, Hoopes v Bruno, supra).

The New York statutory attorney-client privilege is not absolute. Because it "constitutes an 'obstacle' to the truth-finding process", its "invocation * * * should be cautiously observed to ensure that its application is consistent with its

purpose" *(Matter of Jacqueline F.,* 47 NY2d 215, 219). Merely because communication occurs between a lawyer and a client is not enough; the information must be a *confidential* communication for the purpose of obtaining legal advice *(Matter of Priest v Hennessy,* 51 NY2d 62, 69). The privilege may also yield to a strong public policy requiring disclosure *(supra).* Furthermore, the burden of bringing the information sought within the privilege is upon the party asserting it *(supra,* at 70).

Applying these principles to this case, the questions propounded regarding whether defendant sought legal advice with respect to the exercise of his duties as a trustee or corporate officer in connection with the various proposals for the sale or buyout of the corporation and the transactions between management and the corporation described in the complaint and the inquiries concerning fee arrangements were clearly not shown by defendant to fall within the privilege. Ordinarily, whether an attorney was consulted, fee arrangements, and the identity of the lawyer or the client are not deemed confidential communications *(see, supra,* at 69; *Matter of Jacqueline F., supra,* at 219; *Arnold Constable Corp. v Chase Manhattan Mtge. & Realty Trust,* 59 AD2d 666, 667). Defendant has not demonstrated why his case presents an exception.

A more difficult issue is presented insofar as plaintiffs' line of questioning was designed to elicit information on the content of the communications between defendant and his attorneys regarding the transactions and proposals which are the subject matter of the complaint. The salient factor on this issue is that defendant, both in his capacity as a trustee and as a corporate officer and director, was the fiduciary of plaintiffs. In any of these roles, defendant was not entitled to shield absolutely from his beneficiaries the communications between him and his attorneys regarding pertinent affairs of the trust and of the corporation (which, in any event, are inextricably intertwined where, as here, the corpus of the trust consists of the majority of the voting shares of the corporate stock) *(see, United States v Evans,* 796 F2d 264, 265-266; *Garner v Wolfinbarger,* 430 F2d 1093, 1101-1103, *cert denied* 401 US 974; *Quintel Corp. v Citibank,* 567 F Supp 1357, 1363; *Washington-Baltimore Newspaper Guild v Washington Star Co.,* 543 F Supp 906, 909-910; *Valente v Pepsico, Inc.,* 68 FRD 361, 369-370; *Matter of Estate of Torian v Smith,* 263 Ark 304, 564 SW2d 521, *cert denied* 439 US 883; *Riggs Natl. Bank v Zimmer,* 355 A2d 709 [Del]). Several courts have held that the

privilege does not attach at all when a trustee solicits and obtains legal advice concerning matters impacting upon the interests of the beneficiaries seeking disclosure, on the ground that a fiduciary has a duty of disclosure to the beneficiaries whom he is obligated to serve as to all of his actions, and cannot subordinate the interests of the beneficiaries, directly affected by the advice sought, to his own private interests under the guise of the privilege (see, *Washington-Baltimore Newspaper Guild v Washington Star Co., supra; Valente v Pepsico, Inc., supra; Riggs Natl. Bank v Zimmer, supra*). Other courts have required a showing of good cause from those seeking disclosure from the fiduciary on a balancing of the competing factors for and against the privilege present in the individual case (*Garner v Wolfinbarger, supra*, at 1103-1104; *Quintel Corp. v Citibank, supra*, at 1364). To the extent that the latter decisions emphasize a case-by-case analysis, weighing the individual circumstances presented to determine whether or not the privilege should apply, they appear to be more consistent with the approach to attorney-client privilege issues adopted by the Court of Appeals (see, *Matter of Priest v Hennessy, supra*, at 68; see also, *Beard v Ames*, 96 AD2d 119, 121).

In this case, good cause for disclosure has been shown (see, *Garner v Wolfinbarger, supra*, at 1104; cf., *People v Tissois*, 72 NY2d 75). There is an apparent identity of interests regarding disclosure among the beneficiaries of the trusts. Plaintiffs may have been directly affected by any decision defendant made on his attorneys' advice. The information sought is highly relevant to and may be the only evidence available on whether defendant's actions respecting the relevant transactions and proposals were in furtherance of the interests of the beneficiaries of the trust or primarily for his own interests in preserving and promoting the rewards and security of his position as a corporate officer. The communication apparently related to prospective actions by defendant, not advice on past actions. Plaintiffs' claims of defendant's self-dealing and conflict of interest are at least colorable, and the information they seek is not only relevant, but specific. On the other hand, defendant made no showing, either at the EBT or in his opposition to the motion to compel disclosure before Supreme Court, of any factors which would militate in favor of applying the privilege to the information sought. For example, defendant might have shown that he solicited advice from counsel solely in an individual capacity and at his own expense, as a defensive measure regarding potential litigation over his disputes

with the trust beneficiaries *(see, Riggs Natl. Bank v Zimmer, supra,* at 711; Bogert, Trusts and Trustees § 961, at 11 [2d ed rev]). To the contrary, the record, including defendant's attorneys' correspondence with an investment banking firm regarding a possible acquisition proposal, suggests that counsel acted on behalf of defendant both in his role as trustee and as the chief executive officer of the corporation. And, as we have already noted, defendant refused to divulge any information on fee arrangements.

In short, defendant failed to advance a basis upon which the attorney-client privilege should appropriately be extended to the information plaintiffs sought here, and failed to cite any factors or circumstances, apart from the existence of an attorney-client relationship, which Supreme Court should have weighed in his favor in ruling on the motion to compel. Accordingly, the order compelling disclosure should be affirmed in all respects.

Order affirmed, with costs. Kane, J. P., Mikoll, Levine, Harvey and Mercure, JJ., concur.