OPINION OF THE COURT
Harold Baer, Jr., J.
Plaintiff AMBAC Indemnity Corp. (AMBAC) moves, pursuant to CPLR 3124, to compel defendant Bankers Trust Company (Bankers Trust) to produce 18 documents demanded by plaintiff but withheld by defendant on the ground of attorney-client privilege and to answer questions at depositions about legal advice rendered to defendant. At issue is whether beneficiaries of a trust may discover communications about trust affairs between an indenture trustee and its attorneys.
AMBAC issues insurance to secure the prompt and unconditional payment of principal and interest on new issues of municipal bonds. AMBAC has sued Bankers Trust in this case for the latter’s alleged failure to carry out its obligations as trustee for revenue bonds that were issued in 1981 by three Texas housing finance corporations, public entities. The proceeds of the bonds were used to originate mortgages. The three issuers each entered into a bond indenture with Bankers Trust designating the latter as trustee. The trustee was to hold, and continues to hold, the trust estate for the benefit of the bondholders so as to secure performance of the obligations of the issuers.
The complaint alleges that Bankers Trust has mismanaged trust accounts, as by failing to redeem a proper number of bonds in a certain redemption with proceeds that had not been used to originate mortgages. Plaintiff claims also that the trustee has invaded trust accounts and charged excessive fees.
AMBAC is required, upon demand of Bankers Trust, to deposit funds in the event of any deficiency in payment of principal, interest and mandatory sinking fund redemptions on the bonds. The sums are paid to the bondholders by AMBAC (through an insurance trustee) and, under the policies, AMBAC becomes owner of the uncanceled bonds, coupons or appropriate instrument of assignment and AMBAC is subrogated to the bondholders’ rights. There have been several deficiencies. AMBAC has had to pay $179,428.67 under its insurance policies to make up for three shortfalls and more deficiencies are anticipated in the future. AMBAC seeks damages and a declaration that Bankers Trust must cure future deficiencies.
*336 Having invoked the attorney-client privilege, Bankers Trust bears the burden of establishing that the privilege applies. There is no dispute that the customary standards for demarcating the area of privilege have been satisfied. AMBAC argues, however, that the privilege may be set aside for good cause when beneficiaries seek access to a trustee’s communications with counsel about trust affairs.[1] The principle is surely not a controversial one. A trustee of the normal type is a fiduciary for beneficiaries of the trust and will not be permitted to shield completely his communications with counsel from those who ultimately would be affected by the advice given. (Hoopes v Carota, 142 AD2d 906 [3d Dept 1988], affd 74 NY2d 716 [1989].) This doctrine has also been applied to efforts by corporate management to hide from shareholders communications with counsel on corporate affairs. (See, e.g., Garner v Wolfinbarger, 430 F2d 1093 [5th Cir 1970], cert denied sub nom. Garner v First Am. Life Ins. Co., 401 US 974 [1971], on remand 56 FRD 499 [SD Ala 1972]; Quintet Corp. v Citibank, 567 F Supp 1357, 1360-1362 [SD NY 1983].) The target of this motion, however, is not the captain of a corporation nor the ordinary trustee, but an indenture trustee. The indentures here provide (§9.01) that prior to an event of default, the trustee will perform only those duties specifically set forth in the indenture. Bankers Trust insists that since there has been no event of default, it owes no fiduciary duty. Bankers Trust warns that if access were granted to communications between counsel and itself as indenture trustee, a "major incursion” into the zone of privileged communications would be caused, with the consequence of a chilling effect on the ability of such trustees to obtain legal advice.
An indenture trustee is unlike the ordinary trustee. In contrast with the latter, some cases have confined the duties of the indenture trustee to those set forth in the indenture. (Green v Title Guar. & Trust Co., 223 App Div 12 [1st Dept], affd 248 NY 627 [1928]; Hazzard v Chase Natl. Bank, 159 Misc 57 [Sup Ct 1936], affd 257 App Div 950 [1st Dept], affd 282 NY 652, cert denied 311 US 708 [1940].) The indenture trustee, it has been said, resembles a stakeholder whose obligations are defined by the terms of the indenture agreement. (Meckel v Continental Resources Co., 758 F2d 811, 816 [2d Cir 1985]; see, Sklar, The Corporate Indenture Trustee: Genuine Fiduciary or *337 Mere Stakeholder?, 106 Banking LJ 42 [1989].) The question before me is just how restrictive and rigid this vision of the indenture trustee’s role is.
Bankers Trust points to the Trust Indenture Act of 1939 (15 USC § 77ooo), which permits indentures that limit the liability of the trustee prior to default to the performance of the duties set out in the indenture. Bankers Trust recognizes, however, as it must, that the Act does not actually govern here because the bonds in question were issued by State instrumentalities. Bankers Trust also relies upon Meckel v Continental Resources Co. (supra, at 816) in which the Second Circuit stated that indenture trustee "is not subject to the ordinary trustee’s duty of undivided loyalty.” That remark, though, is dictum and the Second Circuit later read that dictum in a less categorical manner. In Elliott Assocs. v Schroder Bank & Trust Co. (838 F2d 66, 71 [1988]), the court cited Hazzard v Chase Natl. Bank (supra), the same case relied upon in Meckel (supra) for the restrictive view of an indenture trustee’s duties, but went on to say that "the trustee must nevertheless refrain from engaging in conflicts of interest.” The court was there addressing State common law, though the case itself involved the Trust Indenture Act of 1939. The court quoted from Meckel, but concluded that the trustee owes no duties beyond those set forth in the indenture "except to avoid conflicts of interest.” (Elliott Assocs. v Schroder Bank & Trust Co., supra, at 71.) There is no doubt that the court meant this qualification to apply outside the bounds of the Trust Indenture Act of 1939 since the court recognized it to be consistent with common law. This is plain from the court’s discussion of Dabney v Chase Natl. Bank (196 F2d 668 [2d Cir 1952], as supplemented 201 F2d 635 [2d Cir], cert dismissed per stipulation 346 US 863 [1953]).
In Dabney (supra), Judge Learned Hand took note of New York’s enforcement of the principle that a trustee is a fiduciary and owes his beneficiary undivided loyalty, free of any conflict of interest. Judge Hand recognized the holding of Hazzard v Chase Natl. Bank (supra) that the duties of an indenture trustee are limited by the terms of the indenture, but he nevertheless rejected the idea "that the courts of New York had given any countenance to the notion that, so far as a corporation sees fit to assume the duties of an indenture trustee, it can shake off the loyalty demanded of every trustee, corporate or individual. We can find no warrant for so supposing; and, indeed, a trust for the benefit of a numerous and *338 changing body of bondholders appears to us to be preeminently an occasion for a scruple even greater than ordinary; for such beneficiaries often have too small a stake to follow the fate of their investment and protect their rights.” (196 F2d, supra, at 671.) Judge Hand spoke of the trustee’s obligation to discharge his duties "with absolute singleness of purpose.” (Supra, at 671.) I am not persuaded, though, at least not yet, that Judge Hand intended to state that the indenture trustee is an ordinary trustee, with broad fiduciary duties. AMBAC’s reading of Dabney emphasizes the quotation set out above but divorced from the context and the definition of the fiduciary duty at hand. The rule imposed even on an indenture trustee is not to engage in a conflict of interest and this seems to be the meaning of the reference to "singleness of purpose.” (Supra, at 671.)[2] As the court in Elliott Assocs. put it, "Dabney stands for the proposition that a trustee must refrain from engaging in conflicts of interest, [but] it simply does not support the broader proposition that an implied fiduciary duty is imposed on a trustee to advance the financial interests of the debenture holders during the period prior to default.” (838 F2d, supra, at 73.) Judge Friendly construed Dabney in a like manner in In re Grant Co. (699 F2d 599, 613 [2d Cir], cert denied sub nom. Cosoff v Rodman, 464 US 822 [1983]; see also, Broad v Rockwell Intl. Corp., 642 F2d 929, 959 [5th Cir] [en banc], cert denied 454 US 965 [1981]).
AMBAC relies heavily on United States Trust Co. v First Natl. City Bank (57 AD2d 285 [1st Dept 1977], affd 45 NY2d 869 [1978]). I do not, however, read the case as undoing the peculiar and limited rule of the indenture trustee, which has been long recognized and which is a reality of modern commercial finance. Thus, I think that United States Trust Co. is consistent with what I understand to be the controlling law— that the duties of an indenture trustee can be limited to those set forth in the indenture and, as a result, the trustee does not owe the broad fiduciary duties of an ordinary trustee prior to an event of default, except that the trustee is at all times *339 obligated to avoid conflicts of interest with the beneficiaries. This interpretation is supported by Elliott Assocs. v Schroder Bank & Trust Co. (838 F2d, supra, at 73); Broad v Rockwell Intl. Corp. (642 F2d, supra, at 959); and Judge Friendly’s decision in In re Grant Co. (699 F2d, supra, at 612).
This approach is consistent as well with Real Property Law § 126. This and related provisions were enacted to correct abuses in public investments in real estate mortgages covered by trust indentures and to bar the parties to a trust indenture from allowing a trustee to avoid his duty to protect the bondholders once a default occurs. (Harper v Larchmont Yacht Club, 38 NYS2d 505 [Sup Ct 1942].) "The trustee cannot freely limit its liabilities and responsibilities under the trust indenture in a manner which would be inconsistent with the statutory policy. More particularly, the trustee cannot restrict its duties by contract to that of a stakeholder. A trustee is required to act in the more traditional sense, assuming the obligations of care and prudence in the performance of his duties. The bondholders have a right to rely upon the trustee to protect their rights especially when the trustee is a corporate trust ostensibly in business for that purpose.” (Groseclose v Merchants Natl. Bank & Trust Co., 71 Misc 2d 111, 115 [Sup Ct 1972].) Section 126 accordingly requires that trust indentures to which the statute is applicable contain various provisions, including one obliging the trustee in the event of default to carry out his duties with the care and skill a prudent man would use in the conduct of his own affairs. To hold that the trustee owes broad common-law fiduciary duties at all times would make this statute superfluous, as well as render meaningless the definition of the trustee’s role in the indenture.[3] The Legislature focused attention on what it deemed necessary in this area and it did not impose the broad duties for which AMBAC argues.
In an effort to make its request unexceptionable, AMBAC has refined its argument. It is not contending now that Bankers Trust was required but failed to perform duties not set forth in the indentures. Instead, AMBAC claims that Bankers Trust "failed to perform duties expressly set forth in the Bond Indentures and that it failed to act with the undivided loyalty *340 and singleness of purpose required of a fiduciary in performing those duties.”
Bankers Trust was obliged to do whatever it undertook to do prior to default and any failure to so perform would open it to a contract claim. After an event of default, Bankers Trust concedes, it would have fiduciary obligations, but there has been (I am assuming) no event of default. Whether, as AMBAC argues, Bankers Trust had fiduciary obligations with respect to the precise predefault duties it undertook and whether United States Trust Co. (supra) and Dabney (supra) so hold are matters I need not now address. These issues may surface later, on a motion for summary judgment or in some other context, since there appears to be a difference of view between the parties as to the standard of care that Bankers Trust was obliged to satisfy with respect to the specific predefault chores it assumed. (See, Indentures §9.01 [b]; compare, Real Property Law § 126 [1].) The foregoing discussion, however, makes clear that prior to default, Bankers Trust has a fiduciary duty not to advance its own interests at the expense of the bondholders. In this case, AMBAC charges that Bankers Trust invaded trust accounts and wrongfully appropriated to its own use funds from an account designated for bond redemption and that Bankers Trust charged excessive fees and paid them to itself in advance of payment of superior obligations. Such allegations are proper claims for breach of fiduciary duty by an indenture trustee even in advance of a default. To the extent that Bankers Trust sought legal advice about the transactions or events on which AMBAC founds its charges that Bankers Trust violated its duty of loyalty, the resultant documents and related deposition questions would come within the reach of Hoopes v Carota (142 AD2d 906, supra) and Garner v Wolfinbarger (430 F2d 1093, supra; see, Matter of Heizer Corp., Del Ch, Nov. 9, 1987, Berger, Vice-Chancellor).
The next question is whether good cause exists to overcome the privilege on the subjects just mentioned. (Hoopes v Carota, 142 AD2d 906, 910-911, supra.) I have afforded the parties here an extra opportunity to present their views beyond those normally provided. I have studied all the submissions. I shall not prolong this opinion further with a detailed analysis of the arguments presented. I conclude that AMBAC has not established good cause for access to the information.
AMBAC argues that Bankers Trust has waived the privilege. It is true, of course, that voluntary disclosure of the *341 content of a privileged communication constitutes a waiver of the privilege as to all other communications on the same subject. (Matter of Baker, 139 Misc 2d 573 [Sur Ct 1988].) AMBAC argues that a waiver occurred when Bankers Trust produced certain memoranda. The memoranda, however, reveal that Bankers Trust consulted White & Case in connection with a bond redemption on June 1, 1983, but are silent about what the client communicated to White & Case in the course of that consultation or what advice the firm furnished in response. Disclosure of the mere fact of a consultation is no basis for a waiver as to the content of that consultation.
Accordingly, the motion is denied.

. AMBAC as subrogee stands in the shoes of the bondholders for whose benefit Bankers Trust sought the advice.

. Judge Hand wrote that "we of course agree that within somewhat ill defined limits a trustee may confine his duties. That question is necessarily determined by the trust deed; but it has nothing to do with the trustee’s duty to discharge whatever obligations he does assume with absolute singleness of purpose.” (Dabney v Chase Natl. Bank, 196 F2d 668, 671.) I take this to mean that the trustee in carrying out his assumed duties must also do so in strict observance of " 'the duty of loyalty’ ” (supra, at 670) the duty "not to profit at the possible expense of his beneficiary” (supra, at 670).

. Hazzard v Chase Natl. Bank (159 Misc 57, 83-85) concluded with great reluctance in view of the facts there that indenture trustees are not fiduciaries. The court stated that legislative intervention was needed and pointed to the pendency of legislation that eventually became Real Property Law § 126.