91 Cal.Rptr.2d 716 (2000)
22 Cal.4th 201
990 P.2d 591
WELLS FARGO BANK, N.A., Petitioner,
v.
The SUPERIOR COURT of Los Angeles County, Respondent;
Vickie Boltwood et al., Real Parties in Interest.
O'Melveny & Myers LLP, Petitioner,
v.
The Superior Court of Los Angeles County, Respondent;
Vickie Boltwood et al., Real Parties in Interest.
No. S057324.
Supreme Court of California.
January 13, 2000.
*719 White & Case, John A. Sturgeon, James R. Cairns, Los Angeles, and Carole C. Peterson, for Petitioner Wells Fargo Bank, N.A.
O'Melveny & Myers, Robert M. Schwartz, Craig A. Corman, Los Angeles, Nancy E. Sussman, Burbank, Richard D. Beller, Los Angeles, and Russell G. Allen, Newport Beach, for Petitioner O'Melveny & Myers.
Christopher Chenoweth; Steefel, Levitt & Weiss, Stephen S. Mayne, Lisa M. Carvalho and Mark Fogelman, San Francisco, for California Bankers Association as Amicus Curiae on behalf of Petitioners.
No appearance for Respondent.
Goldstein & Phillips, Goldstein & Musto, Alvin H. Goldstein, Jr., Mark L. Musto and Kelly J. Snowden, San Francisco, for Real Parties in Interest.
WERDEGAR, J.
In this action for an accounting, the beneficiaries of a private express trust seek to compel the trustee to disclose its privileged communications with attorneys. We conclude the trustee may assert the attorney-client privilege against the beneficiaries.

I. FACTS AND PROCEDURAL HISTORY
William A. Couch established the Couch Living Trust in October 1991. He served as the sole trustee until his death in March 1992. At that time, William's surviving spouse, Rosa Couch, and petitioner Wells Fargo Bank, N.A. (Wells Fargo) became cotrustees pursuant to the trust instrument. The beneficiaries of the trust are William's spouse, children and grandchildren. William's daughter, Vickie Boltwood, and her children (collectively the Boltwoods) are the real parties in interest.
In November 1994, the Boltwoods accused the trustees of a variety of misconduct. The Boltwoods' claims center around allegations that the trustees distributed less money to the Boltwoods than they requested, and that the trustees, over the Boltwoods' objection, decided not to sell certain real property in Anaheim. The Boltwoods also allege that Rosa Couch, shortly after her husband's death, removed money and jewelry from a safe deposit box. The other beneficiaries have not joined in the Boltwoods' claims.
In December 1994, Wells Fargo commenced this action by petitioning the probate court to settle its accounts and to approve its resignation as cotrustee. The Boltwoods filed objections to Wells Fargo's accounts and petitioned for removal of Rosa Couch as cotrustee, and for surcharge and damages.
In the course of the litigation, the Boltwoods requested that Wells Fargo produce documents related to the trust. Wells Fargo produced documents reflecting confidential communications with its attorneys on the subject of trust administration. Wells Fargo asserted the attorney-client privilege, however, as to documents reflecting communications with its attorneys about the Boltwoods' claims of misconduct. Wells Fargo's outside trust administration counsel, O'Melveny & Myers (O'Melveny), claimed the protection of the work product doctrine for other documents. For the documents not produced, Wells Fargo and O'Melveny provided a privilege log setting out for each document the privilege asserted and the document's sequential number, general nature, date, author and recipients. According to the log, the documents not produced include communications between Wells Fargo's employees and its attorneys, either in-house or at O'Melveny, and work product of O'Melveny.
The Boltwoods moved to compel production. The superior court granted the motion and ordered Wells Fargo to produce the remaining documents within 30 days. The court did not announce findings of fact or conclusions of law, either orally or in writing. Wells Fargo petitioned the Court of Appeal for a writ of mandate or prohibition and sought a stay of the superior *720 court's order. O'Melveny also sought a stay and extraordinary relief. The Court of Appeal considered the petitions together and granted relief. Specifically, the court vacated the superior court's order compelling production of documents subject to the attorney-client privilege and directed the superior court to examine in camera the documents as to which O'Melveny had claimed the protection of the work product doctrine.
We granted the Boltwoods' petition for review and held the case for Moeller v. Superior Court (1997) 16 Cal.4th 1124, 69 Cal.Rptr.2d 317, 947 P.2d 279 (Moeller). We now affirm.

II. DISCUSSION

A. The Attorney-client Privilege
Wells Fargo has already produced to the Boltwoods documents reflecting privileged communications with attorneys on the subject of trust administration. The Boltwoods contend that Wells Fargo must produce additional privileged documents of that type, as well as privileged documents concerning the Boltwoods' claims of misconduct. As will appear, there is no authority in California law for requiring a trustee to produce communications protected by the attorney-client privilege, regardless of their subject matter.
The Boltwoods contend Wells Fargo must produce privileged communications to fulfill its statutory and common law duties as a trustee to report to the beneficiaries about the trust and its administration. (See Prob.Code, §§ 16060, 16061; Strauss v. Superior Court (1950) 36 Cal.2d 396, 401, 224 P.2d 726; Union Trust Co. v. Superior Court (1938) 11 Cal.2d 449, 460-462, 81 P.2d 150.) Wells Fargo's duties as a trustee, the Boltwoods argue, take precedence over its privilege as the client of an attorney. (Evid.Code, § 954.) The argument lacks merit. The privileges set out in the Evidence Code are legislative creations; the courts of this state have no power to expand them or to recognize implied exceptions. (Roberts v. City of Palmdale (1993) 5 Cal.4th 363, 373, 20 Cal.Rptr.2d 330, 853 P.2d 496; see also Moeller, supra, 16 Cal.4th at p. 1129, 69 Cal.Rptr.2d 317, 947 P.2d 279.) The Boltwoods' argument is nothing more than a plea for an implied exception.
If the relevant sections of the Probate Code imposed duties a trustee literally could not perform without disclosing privileged communications, one might have reason to ask whether the Legislature had, in fact, created an exception to the attorney-client privilege. But the relevant statutes cannot fairly be read to require disclosure of privileged communications. Probate Code section 16060 provides simply that "[t]he trustee has a duty to keep the beneficiaries of the trust reasonably informed of the trust and its administration." (Italics added.) Probate Code section 16061 in pertinent part says only that, "[e]xcept as provided in Section 16064, on reasonable request by a beneficiary, the trustee shall provide the beneficiary with a report of information about the assets, liabilities, receipts, and disbursements of the trust, the acts of the trustee, and the particulars relating to the administration of the trust relevant to the beneficiary's interest, including the terms of the trust...." (Italics added.) Certainly a trustee can keep beneficiaries "reasonably informed" (id., § 16060) and provide "a report of information" (id., § 16061) without necessarily having to disclose privileged communications. The attorney-client privilege is commonly regarded as "fundamental to ... the proper functioning of our judicial system" (Mitchell v. Superior Court (1984) 37 Cal.3d 591, 611, 208 Cal.Rptr. 886, 691 P.2d 642) and thought to "promote broader public interests in the observance of law and administration of justice" (Up john Co. v. United States (1981) 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584). If the Legislature had intended to restrict a privilege of this importance, it would likely have *721 declared that intention unmistakably, rather than leaving it to courts to find the restriction by inference and guesswork in the interstices of the Probate Code.
Nor does the Boltwoods' argument for limiting the attorney-client privilege find support in Strauss v. Superior Court, supra, 36 Cal.2d 396, 224 P.2d 726. In that decision, we acknowledged the trustee's common law duty to report to beneficiaries, a duty later codified in Probate Code sections 16060 and 16061.[1] More specifically, we held that "[a] trustee has the duty to the beneficiaries to give them upon their request at reasonable times complete and accurate information relative to the administration of the trust" (Strauss v. Superior Court, supra, at p. 401, 224 P.2d 726) and that "the trustee's records as to the administration of the trust are deemed a part of the trust estate, and the right of the beneficiaries to an inspection of them stems from their common interest in the property along with the trustee" (id. at p. 402, 224 P.2d 726). Our earlier decision in Union Trust Co. v. Superior Court, supra, 11 Cal.2d at pages 460-462, 81 P.2d 150, is to the same effect. In neither Strauss nor Union Trust Co., however, did we address any question concerning the attorneyclient privilege. To attempt to use those decisions as the foundation for an implied exception to the attorney-client privilege would, moreover, be inconsistent with the rule that we have no power to create such exceptions. (See Roberts v. City of Palmdale, supra, 5 Cal.4th at p. 373, 20 Cal.Rptr.2d 330, 853 P.2d 496.)
In most of the other jurisdictions in which this question has arisen, courts have given the trustee's reporting duties precedence over the attorney-client privilege. (See, e.g., Hoopes v. Carota (1988) 142 A.D.2d 906, 531 N.Y.S.2d 407, 409, affd. (1989) 74 N.Y.2d 716, 544 N.Y.S.2d 808, 543 N.E.2d 73; Riggs Nat. Bank of Washington, B.C. v. Zimmer (Del.Ch.1976) 355 A.2d 709, 712-714; United States v. Evans (9th Cir.1986) 796 F.2d 264, 265-266; Washington-Baltimore, etc. v. Washington Star Co. (D.D.C.1982) 543 F.Supp. 906, 908-909.) But those courts consider themselves free, in a way we do not, to create exceptions to the privilege. New York's attorney-client privilege, while statutory, is "not absolute." (Hoopes v. Carota, supra, 531 N.Y.S.2d at p. 409.) Instead, the courts of that state consider the privilege an "`"obstacle" to the truth-finding process'" that may "yield to a strong public policy requiring disclosure...." (Ibid.) The law in Delaware evolved at a time when that state recognized the attorneyclient privilege solely as a matter of common law. As such, Delaware courts have considered the privilege to be "an exception to the usual rules requiring full disclosure" and have held that "its scope can be limited where circumstances so justify." (Riggs Nat. Bank of Washington, D.C. v. Zimmer, supra, 355 A.2d at p. 713.) The federal courts, interpreting their own common law attorney-client privilege (see generally Upjohn Co. v. United States, supra, 449 U.S. at p. 389, 101 S.Ct. 677; Hunt v. Blackburn (1888) 128 U.S. 464, 470, 9 S.Ct. 125, 32 L.Ed. 488), have largely followed Riggs. (E.g., U.S. v. Mett (9th Cir.1999) 178 F.3d 1058, 1062-1064; United States v. Evans, supra, 796 F.2d at pp. 265-266; Washington-Baltimore, etc. v. Washington Star Co., supra, 543 F.Supp. at pp. 908-909.)
Typical of the federal decisions is U.S. v. Mett, supra, 178 F.3d 1058. In Mett, the Ninth Circuit held that a trustee can invoke the federal common law attorney-client privilege against beneficiaries when the trustee "retains counsel in order to defend herself against the ... beneficiaries," *722 but not when the "trustee seeks an attorney's advice on a matter of [trust] administration and where the advice clearly does not implicate the trustee in any personal capacity...." (Id. at p. 1064.) Neither of the two reasons the court gave for this conclusion has any validity under California law. The court's suggestion that the trustee "`is not the real client'" (id. at p. 1063) of the attorney retained by the trustee directly contradicts California law, under which "[t]he attorney for the trustee of a trust is not, by virtue of this relationship, also the attorney for the beneficiaries of the trust. The attorney represents only the trustee." (Fletcher v. Superior Court (1996) 44 Cal.App.4th 773, 777, 52 Cal.Rptr.2d 65; accord, Lasky, Haas, Cohler & Munter v. Superior Court (1985) 172 Cal.App.3d 264, 282, 218 Cal. Rptr. 205; cf. Moeller, supra, 16 Cal.4th at p. 1130, 69 Cal.Rptr.2d 317, 947 P.2d 279.) Nor, under California law, could a "fiduciary exception [to the attorney-client privilege] ... be understood as an instance of the attorney-client privilege giving way in the face of a competing legal principle." (U.S. v. Mett, supra, at p. 1063.) What courts in other jurisdictions give as common law privileges they may take away as exceptions. We, in contrast, do not enjoy the freedom to restrict California's statutory attorney-client privilege based on notions of policy or ad hoc justification. (Roberts v. City of Palmdale, supra, 5 Cal.4th at p. 373, 20 Cal.Rptr.2d 330, 853 P.2d 496.) Furthermore, under California law, the attorney-client privilege "applies not only to communications made in anticipation of litigation, but also to legal advice when no litigation is threatened." (Id. at p. 371, 20 Cal.Rptr.2d 330, 853 P.2d 496.)
The Boltwoods argue that our recent decision in Moeller, supra, 16 Cal.4th 1124, 69 Cal.Rptr.2d 317, 947 P.2d 279, compels a different result. It does not. In Moeller, we held that a successor trustee, unless the trust instrument otherwise provides, assumes the power to assert the attorney-client privilege as to confidential communications between an attorney and a predecessor trustee on the subject of trust administration, so long as the predecessor was acting in the official capacity of trustee rather than in a personal capacity. (Id. at pp. 1130-1135, 69 Cal.Rptr.2d 317, 947 P.2d 279.) The Boltwoods describe Moeller as creating "rights of inspection" that should be extended to beneficiaries. This is simply incorrect. In Moeller, we did not suggest that anyone other than the current holder of the privilege might be entitled to inspect privileged communications. Nor did we create or recognize any exceptions to the
privilege. Instead, without questioning that the communications at issue were privileged, we merely identified the current holder of the privilege.
The Boltwoods also contend that, even if the trustee's communications with attorneys about its potential liability are privileged, a trustee still should enjoy no privilege as against the beneficiary for communications about trust administration. In support of the argument, the Boltwoods again cite Moeller, supra, 16 Cal.4th 1124, 69 Cal.Rptr.2d 317, 947 P.2d 279, and also Talbot v. Marshfield (Ch. 1865) 62 Eng.Rep. 728. Neither decision, however, could justify limiting the attorney-client privilege in the manner the Boltwoods propose. Although in Moeller we did distinguish between communications about potential liability and communications about trust administration, we did not draw the distinction in order to narrow the privilege. Instead, our purpose was to determine, as between a successor trustee and a predecessor, which trustee was the current holder of the privilege as to any given communication. More specifically, we explained that "the successor trustee inherits the power to assert the privilege only as to those confidential communications that occurred when the predecessor, in its fiduciary capacity, sought the attorney's advice for guidance in administering the trust. If a predecessor trustee seeks legal advice in its personal capacity out of a genuine concern for possible future charges of breach *723 of fiduciary duty, the predecessor may be able to avoid disclosing the advice to a successor trustee by hiring a separate lawyer and paying for the advice out of its personal funds." (Moeller, supra, 16 Cal.4th at p. 1134, 69 Cal.Rptr.2d 317, 947 P.2d 279, italics omitted.) In this passage we did not suggest that confidential communications about trust administration might not be privileged. We simply determined who, as between the predecessor trustee and the successor, would be the holder of the privilege under the circumstances posited.
Nor would the decision in Talbot v. Marshfield, supra, 62 Eng.Rep. 728, justify a California court in limiting the trustee's attorney-client privilege to communications about the trustee's personal liability. We have already explained that courts interpreting common law evidentiary privileges are free, in a way we are not, to recognize exceptions. Talbot was such a case. In it, the Court of Chancery required the trustees of a testamentary trust to produce to the beneficiaries an opinion of counsel concerning trust administration that had been prepared before litigation between the trustee and the beneficiaries had commenced. The court did not, however, require the trustees to produce an opinion of counsel prepared after litigation had commenced advising the trustees how to defend themselves. We cited Talbot in Moeller simply to "articulate[] the distinction between a trustee consulting an attorney as trustee to further the beneficiaries' interests, and a trustee consulting an attorney in his personal capacity to defend against a claim by the beneficiaries...." (Moeller, supra, 16 Cal.4th at p. 1134, fn. 5, 69 Cal.Rptr.2d 317, 947 P.2d 279.) We expressly disclaimed any intention of addressing a trustee's privilege vis-à-vis the beneficiaries. (Ibid.)
The Boltwoods suggest that enforcing the trustee's right to assert the attorney-client privilege will permit trustees to shield all deliberations about trust administration, thus entirely frustrating the trustee's statutory reporting duties. (Prob.Code, §§ 16060, 16061.) We discern no good reason to fear such a result. Knowledge that is not otherwise privileged does not become so merely by being communicated to an attorney. "`"Obviously, a client may be examined on deposition or at trial as to facts of the case, whether or not he has communicated them to his attorney."'" (People ex rel. Dept. of Public Works v. Donovan (1962) 57 Cal.2d 346, 355, 19 Cal.Rptr. 473, 369 P.2d 1.) Moreover, "the forwarding to counsel of nonprivileged records, in the guise of reports, will not create a privilege with respect to such records and their contents where none existed theretofore." (S.F. Unified Sch. Dist. v. Superior Court (1961) 55 Cal.2d 451, 457, 11 Cal.Rptr. 373, 359 P.2d 925.)[2]
As we noted at the outset, Wells Fargo has already disclosed to the Boltwoods confidential communications with attorneys on the subject of trust administration. From the preceding discussion, however, it follows that Wells Fargo had no obligation to do so. This conclusion renders moot the Boltwoods' further contention that the superior court may review in camera the documents Wells Fargo has withheld in order to determine whether they relate to trust administration or to *724 the trustee's personal liability. The Boltwoods are entitled to neither category of documents. We have, therefore, no occasion to discuss their claim that the superior court might properly conduct such a review despite Evidence Code section 915, which provides that "the presiding officer may not require disclosure of information claimed to be privileged ... in order to rule on the claim of privilege...."
The Boltwoods argue that Wells Fargo, through disclosures it has already made in discovery, has waived the attorney-client privilege as to the remaining communications not yet disclosed. The argument lacks merit. "[A] waiver is the intentional relinquishment of a known right." (BP Alaska Exploration, Inc. v. Superior Court (1988) 199 Cal.App.3d 1240, 1252, 245 Cal.Rptr. 682.) Wells Fargo, in honoring the Boltwoods' demand for privileged communications regarding trust administration, apparently believed in good faith that the law required the disclosures. Although we conclude the trustee's reporting duties do not trump the attorney-client privilege, no controlling authority on point existed at the time Wells Fargo responded to the Boltwoods' discovery request. Decisions in other jurisdictions had gone both ways. (Compare the cases cited ante, 91 Cal.Rptr.2d at p. 721, 990 P.2d at p. 595, with Huie v. DeShazo, supra, 922 S.W.2d 920 [permitting a trustee to assert the attorney-client privilege against a beneficiary].) An honest mistake of law, where the law is unsettled and debatable, both militates against a finding of waiver (BP Alaska Exploration, Inc. v. Superior Court, supra, at p. 1252, 245 Cal.Rptr. 682) and offers a possible basis for relief from actions taken in connection with pretrial discovery (Brochtrup v. Intep (1987) 190 Cal.App.3d 323, 329, 235 Cal.Rptr. 390).[3]
As an independent argument for obtaining access to Wells Fargo's privileged communications, the Boltwoods contend they are joint clients of Wells Fargo's attorneys and, thus, entitled to inspect any privileged communications. The general rule, as already noted, is to the contrary. "The attorney for the trustee of a trust is not, by virtue of this relationship, also the attorney for the beneficiaries of the trust. The attorney represents only the trustee." (Fletcher v. Superior Court, supra, 44 Cal. App.4th at p. 777, 52 Cal.Rptr.2d 65; accord, Lasky, Haas, Cohler & Munter v. Superior Court, supra, 172 Cal.App.3d at p. 278, 218 Cal.Rptr. 205; cf. Moeller, supra, 16 Cal.4th at p. 1130, 69 Cal. Rptr.2d 317, 947 P.2d 279 [when a trustee exercises his statutory power under Probate Code section 16247 to consult an attorney, "the trustee, qua trustee, becomes the attorney's client"].)
This is not to say that trustees and beneficiaries could not possibly become joint clients. Because no such relationship is implied in law (Lasky, Haas, Cohler & Munter v. Superior Court, supra, 172 Cal.App.3d at p. 278, 218 Cal. Rptr. 205), however, the existence of such a relationship (and its propriety under the rules prohibiting conflicts of interest) would have to be determined on the facts of each individual case. In this case, the Boltwoods assert that a partner of O'Melveny, the firm retained by Wells Fargo to give advice on trust administration, did enter into an attorney-client relationship with the Boltwoods. The record does not support the assertion. The Boltwoods' argument is based on a single sentence in Vickie Boltwood's declaration in support of *725 her motion to compel production of privileged documents: Attorney Leah Bishop, Boltwood avers, "stated to me on one occasion that she represented me as a beneficiary of the [t]rust, and I did not need an attorney...." Even were it possible to infer from this evidence alone the existence of an attorney-client relationship, Ms. Boltwood's own declaration negates any such inference with the plain statement that "Ms. Bishop did not deal with me as a lawyer in these instances, but rather as a substitute for and liaison for Ms. Hydar (or Ms. Palumbo) [i.e., Wells Fargo's trust officers]...."
The Boltwoods contend they are entitled to inspect Wells Fargo's privileged communications with attorneys for the additional reason that the trust paid for the attorney's advice. Wells Fargo concedes the trust paid for O'Melveny's legal services related to trust administration, but asserts it did not pay for the services either of Wells Fargo's in-house attorneys or White & Case, the firm that represents Wells Fargo in this litigation. It does not matter. Payment of fees does not determine ownership of the attorneyclient privilege. The privilege belongs to the holder, which in this context is the attorney's client. (Evid.Code, § 954, subd. (a).) As discussed above, the trustee, rather than the beneficiary, is the client of an attorney who gives legal advice to the trustee, whether on the subject of trust administration (Moeller, supra, 16 Cal.4th at pp. 1129-1130, 69 Cal.Rptr.2d 317, 947 P.2d 279; Fletcher v. Superior Court, supra, 44 Cal.App.4th at p. 777, 52 Cal. Rptr.2d 65; Lasky, Haas, Cohler & Munter v. Superior Court, supra, 172 Cal. App.3d at p. 278, 218 Cal.Rptr. 205) or of the trustee's own potential liability (cf. Moeller, supra, at p. 1135, 69 Cal.Rptr.2d 317, 947 P.2d 279). To the extent the source of payment has any significance, it is but one indicium in determining the existence of an attorney-client relationship (Lasky, Haas, Cohler & Munter v. Superior Court, supra, at p. 285, 218 Cal.Rptr. 205) and, thus, who holds the privilege. In any event, the assumption that payment of legal fees by the trust is equivalent to direct payments by beneficiaries is of dubious validity. (See id. at pp. 284-285, 218 Cal.Rptr. 205.) Under California law, a trustee may use trust funds to pay for legal advice regarding trust administration (Prob.Code, § 16247) and may recover attorney fees and costs incurred in successfully defending against claims by beneficiaries (Estate of Beach (1975) 15 Cal.3d 623, 644, 125 Cal.Rptr. 570, 542 P.2d 994; Estate of Ivy (1994) 22 Cal.App.4th 873, 883, 28 Cal.Rptr.2d 16; Conley v. Waite (1933) 134 Cal.App. 505, 506-507, 25 P.2d 496; see Prob.Code, § 15684). When the law gives the trustee a right to use trust funds, or to reimbursement, the funds do not in law belong to the beneficiaries. Conversely, if the trustee's expenditures turn out to have been unauthorized, the beneficiaries may ask the probate court to surcharge the trustee. But this question of cost allocation does not affect ownership of the attorney-client privilege.[4]

*726 B. Attorney Work Product Doctrine
The Boltwoods have also moved to compel disclosure of documents as to which O'Melveny, Wells Fargo's trust administration counsel, has asserted the protection of the work product doctrine. Here, as in the lower courts, the Boltwoods argue that the documents in question lost their protection when O'Melveny transmitted them to their real client, Wells Fargo, or on Wells Fargo's behalf to White & Case, the trustee's litigation counsel.
The work product doctrine is codified in Code of Civil Procedure section 2018. Subdivision (c) of the statute, on which O'Melveny relies, provides: "Any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances." (Code Civ. Proc, § 2018, subd. (c).) "The sole exception to the literal wording of the statute which the cases have recognized is under the waiver doctrine[,] which has been held applicable to the work product rule as well as the attorney-client privilege." (BP Alaska Exploration, Inc. v. Superior Court, supra, 199 Cal.App.3d at p. 1254, 245 Cal. Rptr. 682, italics omitted; see 2 Jefferson, Cal. Evidence Benchbook (3d ed. 1997) § 41.14, p. 894 (2 Jefferson).) "[T]he attorney's absolute work product protection," however, "continues as to the contents of a writing delivered to a client in confidence." (BP Alaska Exploration, Inc. v. Superior Court, supra, at p. 1260, 245 Cal.Rptr. 682; see 2 Jefferson, supra, § 41.15, p. 894.) This is because "the client has an interest in the confidentiality of the work product...." (2 Jefferson, supra, § 41.15, p. 894.) So, too, do other attorneys representing the client, such as Wells Fargo's litigation counsel, White & Case. "The protection [of the work product doctrine] precludes third parties not representing the client from discovery of [protected] writing[s]." (BP Alaska Exploration, Inc. v. Superior Court, supra, at p. 1260, 245 Cal.Rptr. 682.)
The superior court granted the Boltwoods' motion to compel production of O'Melveny's work product without articulating its reasoning. The Court of Appeal reversed as to all work product documents that O'Melveny did not communicate to its client, Wells Fargo. As to work product documents that O'Melveny did communicate to Wells Fargo, the Court of Appeal directed the superior court "to hold an in camera review ... to determine whether they are protected from disclosure because they were communicated in confidence."
The Court of Appeal ruled correctly. The Boltwoods offered no conceivably valid reason for compelling production of O'Melveny's work product except the claim of waiver through nonconfidential disclosure.[5] As O'Melveny recognizes, for the superior court to examine the documents in camera is an appropriate way to determine whether they were, in fact, disclosed in confidence. While a court "may not require disclosure of information claimed to be privileged under [division 8 of the Evidence Code] in order to rule on the claim of privilege" (Evid.Code, § 915, subd. (a)), the work product doctrine is codified in Code of Civil Procedure section 2018. Thus, Evidence Code section 915 does not apply. For this reason, courts have recognized that inspection in camera is an appropriate way of determining *727 whether documents are entitled to protection as work product. (BP Alaska Exploration, Inc. v. Superior Court, supra, 199 Cal.App.3d at p. 1261, 245 Cal.Rptr. 682; Lasky, Haas, Cohler & Munter v. Superior Court, supra, 172 Cal.App.3d at p. 286, 218 Cal.Rptr. 205.)

III. DISPOSITION
The judgment of the Court of Appeal is affirmed.
GEORGE, C.J., KENNARD, J., CHIN, J., BROWN, J., and HAERLE, J.[*], concur.
Concurring and Dissenting Opinion by MOSK, J.
I concur in the result, but disagree with the reasoning of the majority that an absolute privilege shields communications between the trustee and the attorney it consulted in its fiduciary capacity on the subject of trust administration.
Wells Fargo Bank, N.A. (Wells Fargo) brought this action for an accounting and approval of its resignation as a trustee of the Couch Living Trust. In response to discovery requests by real parties in interest Vickie Boltwood and her children, as trust beneficiaries, Wells Fargo disclosed attorney-client communications on the subject of administration of the trust; it withheld attorney-client communications regarding claims by the Boltwoods of trustee misconduct. The superior court ordered Wells Fargo to produce the withheld documents; the Court of Appeal vacated the order on the basis that the documents were privileged.
I agree with the majority that the Court of Appeal was correct in holding that communications involving Wells Fargo's potential liability for misconduct were subject to the attorney-client privilege. But I am not persuaded by the majority's conclusion that Wells Fargo was also entitled to assert the privilege with regard to attorney client communications on the subject of trust administration, which it obtained on behalf of the beneficiaries and at their expense.
In my view, the Probate Code required disclosure of those documents, consistent with the fiduciary duties of the trustee, specifically the duty under Probate Code section 16060 to keep the beneficiaries reasonably informed concerning the trust and its administration by providing complete and accurate information with regard to the administration of the trust. On that basis, I would affirm the judgment of the Court of Appeal.

I
Wells Fargo did not doubt that it had an obligation to produce all documents, including attorney-client communications, relating to its administration of the trust. Nor did the Court of Appeal. Adopting the suggestion of amicus curiae California Bankers Association, however, the majority conclude that such documents, too, were subject to the attorney-client privilege. They assert that there is no authority in California law for requiring a trustee to produce communications protected by the attorney-client privilege, regardless of their subject matter. I disagree. In my view, "the relevant sections of the Probate Code" impose duties "a trustee literally could not perform without disclosing privileged communications." (Maj. opn., ante, 91 Cal.Rptr.2d at p. 720, 990 P.2d at p. 594.)
The Probate Code invests the trustee with the power to hire attorneys precisely "to advise or assist the trustee in performance of administrative duties" undertaken subject to its fiduciary duties. (Prob. Code, § 16247.) Exercise of such power is intrinsic to the trustee's general duty of loyalty to the beneficiaries. (See id., § 16202 [trustee's exercise of power is subject to its fiduciary duties].) Moreover, *728 any advice regarding trust administration that was obtained from counsel by the trustee was paid for out of trust funds, i.e., at the beneficiaries expense. Beneficiaries have an unquestionable interest in such advice obtained by the trustee acting in its fiduciary capacity on their behalf.
Probate Code section 16060 provides: "The trustee has a duty to keep the beneficiaries of the trust reasonably informed of the trust and its administration." (Italics added.) Probate Code section 16061 requires the trustee, "on reasonable request," to provide the beneficiary with a report of information about finances of the trusts, acts of the trustee, and "the particulars relating to the administration of the trust relevant to the beneficiary's interest."
The Law Revision Commission comment to the 1990 enactment of Probate Code section 16060 explains that the provision "is consistent with the duty stated in prior California case law to give beneficiaries complete and accurate information relative to the administration of the trust when requested at reasonable times. [Citation.] ... The trustee is under a duty to communicate to the beneficiary information that is reasonably necessary to enable the beneficiary to enforce the beneficiary's rights under the trust or to prevent or redress a breach of trust." (Cal. Law Revision Com. com., 54A West's Ann.Prob. Code (1991 ed.) foil. § 16060, p. 51, italics added.) It cites our holding in Strauss v. Superior Court (1950) 36 Cal.2d 396, 401-402, 224 P.2d 726, that "a trustee has the duty to the beneficiaries to give them upon their request at reasonable times complete and accurate information relative to the administration of the trust."
The "complete and accurate information" required under Probate Code section 16060 necessarily includes attorney-client communications concerning administration of the trust. I disagree with the majority that trustees may, under the Probate Code provisions, keep beneficiaries only partly informed. Moreover, I fail to see how a report by the trustee systematically excluding all attorney-client communications and legal advice could be said to meet the requirement under Probate Code section 16061 that it inform beneficiaries about "the acts of the trustee" and "particulars relating to the administration of the trust."
Unlike the majority's, my view of the requirement under Probate Code section 16060 is also consistent with the prevailing rule in most jurisdictions that the trustee's fiduciary duty of full disclosure to the trust beneficiaries extends to all contents of the trustee's file concerning trust administration matters affecting the trust interests of the beneficiaries, including legal advice. Thus, Professor Scott summarizes the general law as follows: "The trustee is under a duty to the beneficiaries to give them on their request at reasonable times complete and accurate information as to the administration of the trust. The beneficiaries are entitled to know what the trust property is and how the trustee has dealt with it.... [¶] A beneficiary is entitled to inspect opinions of counsel procured by the trustee to guide him in the administration of the trust." (2A Scott & Fratcher, The Law of Trusts (4th ed.1987) § 173, pp. 462-465, fn. omitted; see also Bogert, The Law of Trusts and Trustees (2d rev.ed. 1983) ch. 46, § 961, p. 11 ["The beneficiary ... has a right to obtain and review legal opinions given to the trustee to enable the trustee to carry out the trust, except for such opinions as the trustee has obtained on his own account to protect himself against charges of misconduct."]; IA Nossaman et al., Trust Administration and Taxation (1999) § 27.27[1], pp. 27-149 to 27-151 [describing the right of the beneficiary to obtain "all the information as to the trust and its execution for which he has any reasonable use" as including the right to inspect an opinion of counsel obtained by the trustees concerning its powers in administering the trust]; cf. Rest.2d Trusts, § 173 & com. (b), p. 378 [as an exception to the duty of the trustee to *729 furnish "complete and accurate information as to the nature and amount of trust property," the trustee is "privileged to refrain from communicating to the beneficiary opinions of counsel obtained by him at his own expense and for his own protection"].)
The doctrine is of long standing, finding its roots in the seminal decision in Talbot v. Marshfield (1865 Ch.) 62 Eng.Rep. 728, which we cited with approval in Moeller v. Superior Court (1997) 16 Cal.4th 1124, 1134, footnote 5, 69 Cal.Rptr.2d 317, 947 P.2d 279. As the Court of Chancery in Talbot explained: "[T]he cestuis que trust have an interest in the due administration of the trust, and in that sense, it was for the benefit of all, as it was for the guidance of the trustees in their execution of the trust. Besides, if a trustee properly takes the opinion of counsel to guide him in the execution of the trust, he has a right to be paid the expense of so doing out of the trust estate; and that alone would give any cestuis que trust a right to see the case and opinion [obtained from counsel]." (Talbot v. Marshfield, supra, 62 Eng.Rep. at p. 729.)
The majority concede that the overwhelming authority in point is in agreement that beneficiaries are entitled to obtain information concerning attorney advice to the trustee about trust administration. They nonetheless conclude that we are not free to follow such a rule because the attorney-client privilege is a "legislative creation" that must be deemed absolute in this area. (Maj. opn., ante, 91 Cal.Rptr.2d at p. 720, 990 P.2d at p. 594.)
I disagree that the Legislature intended by implication to exclude attorney communications from the scope of the duty to furnish information under Probate Code section 16060. It is doubtful that it would have created so detrimental an exception to the trustee's duty under the statute sub silentio; if it had intended to carve out a special rule that attorney-client communications with regard to trust administration are not part of the complete and accurate information owed a beneficiary, it would have done so expressly. In stating that there can be no "implied exception" to the attorney-client privilege under Evidence Code section 952 for communications involving trust administration (maj. opn., ante, 91 Cal.Rptr.2d at p. 720, 990 P.2d at p. 594), the majority turn the question on its head. This case does not involve the beneficiaries' right to invoke an exception to the Evidence Code provision; rather, because the Probate Code provides that the trustee has a duty to produce all such information, the privilege never adhered to those communications in the first place.
Nor does the decision in Roberts v. City of Palmdale (1993) 5 Cal.4th 363, 373, 20 Cal.Rptr.2d 330, 853 P.2d 496, which I authored, require a different result. In Roberts we addressed the question whether the Public Records Act (Gov.Code § 6250 et seq.) required public disclosure of a legal opinion of the city attorney distributed to members of the city counsel. (5 Cal.4th at pp. 369-373, 20 Cal.Rptr.2d 330, 853 P.2d 496.) We stressed that although the interviewing authority provides that "every person has a right to inspect any public record," it expressly exempts certain public records from disclosure, including records subject to the attorneyclient privilege. (5 Cal.4th at p. 368, 20 Cal.Rptr.2d 330, 853 P.2d 496.) The Probate Code includes no similar exception to the requirement of disclosure under its section 16060.
The majority's rule will permit trustees to conceal deliberations about trust administration, to the detriment of beneficiaries' statutory rights to information. Unlike the majority, I am not sanguine about the implications of such a result. While it is true, as they note, that knowledge not otherwise privileged does not become so merely by being communicated to an attorney (maj. opn., ante, 91 Cal.Rptr.2d at p. 723, 990 P.2d at p. 597), their holding will privilege all information concerning the nature of advice sought and obtained from an attorney on the subject of trust administration. *730 Such undue extension of the attorney-client privilege will operate at the expense of the beneficiaries in a literal as well as legal sense: they must pay for the legal advice that they are barred from reviewing.

II
As we emphasized in Moeller v. Superior Court, supra, 16 Cal.4th 1124, 1133, 69 Cal.Rptr.2d 317, 947 P.2d 279, a trustee has the equitable obligation to manage property for the benefit of another, it acts not in a personal capacity, but as fiduciary for the interests of the beneficiaries. The distinction the Court of Appeal  and Wells Fargo itself  drew between communications regarding administration of the trust on behalf of the beneficiaries and those affecting its own liability was correct. It is consistent with Moeller and with the authority cited therein. (See, e.g., id. at pp. 1134-1135, 69 Cal.Rptr.2d 317, 947 P.2d 279.) The majority's conclusion is not.
For these reasons I would affirm the judgment of the Court of Appeal solely on the grounds stated therein.
NOTES
[1] See the California Law Revision Commission's comment to Probate Code section 16060: "The section is drawn from the first sentence of Section 7-303 of the Uniform Probate Code (1987) and is consistent with the duty stated in prior California case law to give beneficiaries complete and accurate information relative to the administration of a trust when requested at reasonable times. See Strauss v. Superior Court...." (Cal. Law Revision Com. com., 54A West's Ann. Prob. Code (1991 ed.) foil. § 16060, p. 51.)
[2] "This distinction may be illustrated by the following hypothetical example: Assume that a trustee who has misappropriated money from a trust confidentially reveals this fact to his or her attorney for the purpose of obtaining legal advice. The trustee, when asked at trial whether he or she misappropriated money, cannot claim the attorney-client privilege. The act of misappropriation is a material fact of which the trustee has knowledge independently of the communication. The trustee must therefore disclose the fact (assuming no other privilege applies), even though the trustee confidentially conveyed the fact to the attorney. However, because the attorney's only knowledge of the misappropriation is through the confidential communication, the attorney cannot be called on to reveal this information." (Huie v. DeShazo (Tex. 1996) 922 S.W.2d 920, 923.)
[3] The Boltwoods also contend that Wells Fargo waived the attorney-client privilege by failing to maintain the confidentiality of its communications with counsel about its potential liability. The argument lacks merit. Assuming for the sake of argument, as the Boltwoods claim, that Wells Fargo kept communications with counsel about potential liability in the same file as communications with counsel about trust administration, and consulted one of its in-house attorneys on both subjects, still no basis would exist for finding a lack of confidentiality. Wells Fargo's communications with its attorneys on both subjects were presumptively privileged and confidential.
[4] The same principles dispose of the Boltwoods' contention that Wells Fargo's attorney-client privilege has been destroyed by Evidence Code section 956, under which "[t]here is no privilege ... if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud." The Boltwoods cryptically suggest that Wells Fargo may have committed fraud by seeking legal advice on its liability to the Boltwoods and paying for that advice with trust funds. The argument lacks merit. As discussed in the accompanying text, a trustee has a right to charge the trust for the cost of successfully defending against claims by beneficiaries. The better practice may be for a trustee to seek reimbursement after any litigation with beneficiaries concludes, initially retaining separate counsel with personal funds. (Cf. Moeller, supra, 16 Cal.4th at pp. 1134-1135, 69 Cal.Rptr.2d 317, 947 P.2d 279.) In any event, Wells Fargo has done substantially that. Of the 126 documents withheld as privileged, only 16 reflect communications by trust administration counsel (O'Melveny) about potential claims that were apparently paid for with trust funds. Once the Boltwoods made clear their intention to assert claims, Wells Fargo retained separate litigation counsel (White & Case). These facts do not amount to the prima facie showing of fraud a litigant must make to invoke Evidence Code section 956. (See generally State Farm Fire & Casualty Co. v. Superior Court (1997) 54 Cal.App.4th 625, 643, 62 Cal.Rptr.2d 834; BP Alaska Exploration, Inc. v. Superior Court, supra, 199 Cal.App.3d at p. 1262, 245 Cal. Rptr. 682.)
[5] The Boltwoods also contended they were entitled to O'Melveny's work product because they, as beneficiaries, are the true clients of the trustee's attorneys. The attorney, however, rather than the client, is the holder of the work product privilege. (Lasky, Haas, Cohler & Munter v. Superior Court, supra, 172 Cal. App.3d at p. 271, 218 Cal.Rptr. 205.) In any event, as shown above, the Boltwoods are not O'Melveny's client.
[*] Associate Justice of the Court of Appeal, First District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6, of the California Constitution.