Filed 7/18/16  Kantor v. McDermott Will & Emery CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JAMES RHYS KANTOR,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>McDERMOTT WILL & EMERY et al.,<br><br>Defendants and Respondents. | B264278<br><br>(Los Angeles County<br>Super. Ct. No. SC122075) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lawrence Cho, Judge.  Affirmed.

Law Office of Eric Y. Nishizawa and Eric Y. Nishizawa for Plaintiff and Appellant.

Gibson, Dunn & Cruthcher, James P. Fogelman, Shannon E. Mader and Lily Bu for Defendants and Respondents.

\* \* \* \* \* \*

Plaintiff James Rhys Kantor challenges the trial court's grant of summary judgment to defendants McDermott Will & Emery, Jonathan Lurie, and Nicole Pearl on a single claim for legal malpractice after plaintiff failed to oppose the motion. He also challenges the court's refusal to grant a continuance to give him more time to oppose the motion. We affirm.

## BACKGROUND

### 1. *Paul Kantor's Estate Planning and the Trust Action*

Plaintiff filed his original complaint on February 13, 2014, and his operative first amended complaint (FAC) on June 3, 2014. He alleged a single claim of legal malpractice stemming from defendants' preparation and execution of his father Paul Kantor's estate plan in 2002. Paul died on December 23, 2002, and plaintiff alleged he should have received a one-fourth interest in Paul's valuable fine art collection through provisions of a family trust and a family limited partnership defendants prepared for Paul. He alleged he suffered actual injury on February 19, 2013, when a superior court judge in a separate proceeding challenging Paul's trust ruled Paul's community property interest in his art collection fell within a "personal effects" provision in the family trust and therefore went to Paul's surviving wife and plaintiff's stepmother Ulrike (the trust action). Plaintiff believed defendants' failure to properly prepare and execute the estate plan before Paul's death in 2002 caused him to lose his interest under the trust.

Defendants' undisputed evidence submitted in support of summary judgment showed the following further details. Paul and Ulrike were married from 1960 to 1979 and remarried from 1997 to Paul's death in December 2002. Before their remarriage, in 1994 Paul executed the Third Amendment and Complete Restatement of the Paul Kantor Living Trust, providing that his works of art would be distributed to his children who survived him for 30 days. After remarrying in 1997, Paul and Ulrike executed a full restatement of the Paul Kantor Living Trust, transforming it to the Kantor Family Trust.

2

Under it, if Paul died first, his "tangible personal property" including "works of art," would be allocated to a Survivor's Trust for Ulrike's benefit.[1]

Defendants performed estate planning services for Paul and Ulrike in 2002. They prepared three documents, all executed on July 3, 2002: a Restatement of the Kantor Family Trust (the Restatement); an agreement of limited partnership, which formed the Kantor Family, L.P. (the FLP); and a Will of Paul Kantor (the Will). The Will transferred all of Paul's assets, including his "tangible personal property" such as "works of art," to the trustee of the trust. Under the Restatement, Paul and Ulrike were trustees, and if Paul died first, his separate and community property would be allocated to a Decedent's trust, then Ulrike as the surviving trustee would distribute his personal effects according to a personal effects list. If any items did not appear on the personal effects list, they would be allocated to the Survivor's Trust. Separately, upon Paul's death, plaintiff would be allocated $300,000 from the Decedent's trust in a irrevocable trust for his benefit, and upon Ulrike's death, he would be allocated another $300,000.

Under a partnership agreement governing the FLP (the FLP agreement), Paul and Ulrike were responsible for making capital contributions to the FLP. At the time they executed the FLP agreement on July 3, 2002, they did not make any initial capital contribution. They ultimately decided not to fund the FLP and never registered it with the Secretary of State. Plaintiff testified at his deposition that he was unaware of the FLP and Paul never told him he intended to fund the FLP with artwork.

A month after executing these documents, Paul deposited approximately $700,000 in plaintiff's separate irrevocable trust. He did so "to take care of [plaintiff] so he can afford a house for himself."

When Paul died in December 2002, these documents caused his entire substantial art collection to pass to Ulrike. As noted, he never placed any artwork in the FLP to fund it. Instead, his "works of art" were listed in the definition of "personal effects" in the

---

[1]    Paul and Ulrike signed a written agreement in 1997 providing that all of their property, including Paul's art collection, would be community property.

3

Restatement. Because Paul never prepared a personal effects list before his death, his art collection passed to Ulrike as the survivor. According to Ulrike's deposition testimony, this is what they intended, which they expressed to defendants at the time. Arnold Kaufman, a longtime accountant and advisor for Paul and Ulrike who was involved in their estate planning with defendants, similarly testified Paul intended to leave his art collection to Ulrike. Plaintiff testified neither Paul nor Ulrike ever expressed an intention to give him a portion of Paul's art collection.

In 2003, plaintiff obtained a copy of the Restatement showing Ulrike receiving Paul's art collection. And by November 2009, he had become aware she had sold over $7 million of Paul's art collection in 2007, including learning in May 2009 of a February 2007 sale for $4 million.

On April 25, 2011, plaintiff sued Ulrike and Kaufman in the trust action, alleging a host of claims related to the Restatement and his irrevocable trust. As part of that lawsuit, he deposed Ulrike on June 1, 2012, and questioned her about a March 23, 2004 United States Estate Tax Return, Form 706 (Form 706) filed on behalf of Paul, which reflects "artwork and collectibles" valued at over $9 million, with half designated as community property. The form indicated those assets passed to Ulrike on Paul's death and the FLP owned no assets. Plaintiff also deposed defendants Jonathan Lurie and Nicole Pearl. On August 24, 2012, Lurie testified Form 706 showed the FLP had no assets at Paul's death and his art collection passed to the Survivor's Trust under the Restatement. Plaintiff questioned him about handwritten notes by Pearl from a June 2002 meeting with Paul and Ulrike, which stated the "Family L[.]P. [w]ill hold art and stocks and bonds." Pearl testified on February 13, 2013, regarding the FLP and her notes from the meeting with Paul and Ulrike.

On February 19, 2013, the court in the trust action held an evidentiary hearing on the proper allocation of Paul's community property interest in his art collection. Plaintiff primarily contented the collection did not fall within the "personal effects" provision in

4

the Restatement. In a February 26, 2013 minute order, the court disagreed, which confirmed Paul's art collection went to Ulrike.[2]

## 2. *The Malpractice Lawsuit*

Just shy of one year after that ruling, plaintiff filed the original complaint in this case. On June 12, 2014, defendants reserved March 27, 2015, for a hearing on an anticipated summary judgment motion and informed plaintiff of that date at a July 7, 2014 case management conference. The parties commenced discovery on July 30, 2014. Both parties deposed Ulrike and Kaufman, and defendants deposed plaintiff and served written discovery requests, to which plaintiff responded.

On December 9, 2014, plaintiff's former counsel moved to be relieved as counsel.

On January 6, 2015, defendants moved for summary judgment on three independent grounds: (1) plaintiff's claim was barred by the statute of limitations in Code of Civil Procedure section 340.6 (section 340.6); (2) plaintiff lacked standing to bring his malpractice claim; and (3) plaintiff could not establish causation.

On February 10, 2015, plaintiff filed a substitution of counsel to represent himself. The court took the pending motion to be relieved as counsel off calendar and noted "[a]ll future dates are to remain as currently set."

Plaintiff's opposition to the pending summary judgment motion was due March 13, 2015. Two days prior and without an attorney, he filed an ex parte application to extend the time to file his opposition to May 9, 2015. Defendants opposed, and the court denied it without prejudice. Plaintiff filed a new ex parte application on March 13, 2015, the day his summary judgment opposition was due, again requesting an extension to May 9, 2015. In a declaration, he claimed his former attorney had not propounded discovery on defendants and failed to respond to defendants' discovery. He asserted an extension would allow him "to ascertain material facts that will enable [him] to

---

[2]    Plaintiff eventually settled that suit for $1 million plus forgiveness of a $460,000 loan.

5

successfully oppose defendant's motion for summary judgment." He requested defendants' counsel consent to an extension on March 3, 2015, but counsel refused.

In a second declaration, he explained to successfully oppose the motion, he needed "an expert witness with knowledge of issues surrounding the statute of limitations in trust and estates attorney malpractice/professional negligence and the issues surrounding the execution of estate plans to depose and provide their opinion in regards to the corresponding standards of care at issue in [the] current matter and whether or not the defendants met that standard in the performance of their duties." He further claimed he needed additional discovery on entry No. 18 in defendants' privilege log in the trust action related to a communication between defendants and Paul, as well as the enclosures in an October 14, 2002 letter also withheld by defendants.

Defendants filed a detailed opposition, arguing plaintiff failed to show good cause for a continuance. They pointed out plaintiff had more than eight months' notice for the summary judgment hearing, yet he failed to conduct discovery. Defendants pointed out entry No. 18 was from defendants' privilege log in the trust action and plaintiff never moved to compel production of that document in that action. Similarly, plaintiff could have retained an expert at any time, but did not. In any case, the discovery he sought would be irrelevant to the issues defendants raised in the summary judgment motion, namely the statute of limitations, standing, and causation. Defendants further contended the withdrawal of plaintiff's counsel a month before the hearing did not excuse him from conducting discovery prior to that time.

The court denied a continuance and plaintiff did not file an opposition to the summary judgment motion. After a hearing at which plaintiff—still unrepresented— argued his position, the court granted summary judgment to defendants. In a minute order, it noted plaintiff's failure to oppose did not relieve defendants from showing summary judgment was warranted, but concluded defendants carried their burden to

6

show summary judgment was proper on all three grounds advanced—the statute of limitations, standing, and causation. The court entered judgment and plaintiff appealed.[3]

<h1 style="text-align:center">DISCUSSION</h1>

## 1. *Summary Judgment*

On appeal, the parties have briefed the same three independent grounds that formed the basis for the trial court's ruling granting summary judgment. Because we find the statute of limitations issue dispositive, we need not address the other issues.

### A. *Legal Standard*

We review the grant of summary judgment de novo, considering all the evidence set forth in the moving and opposition papers except evidence for which objections were made and sustained. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) Under Code of Civil Procedure section 437c, subdivision (c), a motion for summary judgment must be granted if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, we must decide whether the defendant has conclusively negated a necessary element of the plaintiff's claim or has established an affirmative defense and has demonstrated no material issue of fact requires a determination at trial. (Code Civ. Proc., § 437c, subds. (*o*), (p)(2); *Guz, supra*, at p. 334.) The burden then shifts to the plaintiff to present evidence showing a triable issue of fact. (Code Civ. Proc., § 437c, subd. (p)(2).) Even when a motion is unopposed, the moving party must meet its initial burden before the trial court may grant summary judgment. (*Harmon v. Mono General Hospital* (1982) 131 Cal.App.3d 607, 613.)

### B. *Statute of Limitations*

Section 340.6 sets forth one-year and four-year statutes of limitations for legal malpractice claims: "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable

---

[3] Plaintiff is represented by counsel on appeal.

diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." (§ 340.6, subd. (a).) "[I]n no event shall the time for commencement of legal action exceed four years except that period shall be tolled during the time that" "[t]he plaintiff has not sustained actual injury" or "[t]he attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation." (§ 340.6, subd. (a)(1), (3).) Because the undisputed evidence demonstrates plaintiff failed to file his lawsuit within the four-year period in section 340.6, we need not decide whether plaintiff's claim was also barred by shorter the one-year discovery period.[4]

As plaintiff alleged in the FAC, the "wrongful act or omission" occurred prior to Paul's death in 2002 when, according to plaintiff, defendants "failed to exercise reasonable care and skill . . . in that they failed to properly prepare and execute [Paul's] estate plan, including, but not limited to the amended and restated Kantor Family Trust." If defendants had not negligently drafted Paul's estate plan, plaintiff would have received a portion of Paul's art collection at his death. Plaintiff argues defendants failed to carry their burden to show summary judgment was proper because they did not include facts in their separate statement revealing this specific "wrongful act or omission." In his view, the limitations period cannot be accurately calculated on this record. But he ignores that *he* pleaded the wrongful act in the FAC, a necessary element of his malpractice claim. In their separate statement, defendants set forth sufficient facts to substantiate their representation of Paul and Ulrike leading up to Paul's death in 2002 and plaintiff's knowledge of Paul's estate planning thereafter. Plaintiff filed his lawsuit in

---

**4** As a result, the parties' dispute over when plaintiff actually or constructively discovered defendants' alleged "wrongful act or omission" is irrelevant to our decision. (See *Radovich v. Locke-Paddon* (1995) 35 Cal.App.4th 946, 968-970 [four-year period in § 340.6 runs from the date of occurrence, whether or not plaintiff discovered the malpractice].)

8

February 2014, more than a decade after defendants' alleged wrongful act, so, absent tolling, his claim was untimely.

Plaintiff claims the statute of limitations was tolled until February 26, 2013, when he suffered "actual injury" after the court in the trustee action found Paul's art collection fell within his "personal effects" under the Restatement, and therefore went to Ulrike. There is no bright-line rule for actual injury, and it can be resolved on summary judgment if the facts are undisputed. (*Truong v. Glasser* (2009) 181 Cal.App.4th 102, 111.) The test is "whether the plaintiff has sustained any damages compensable in an action, other than one for actual fraud, against an attorney for a wrongful act or omission arising in the performance of professional services." (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 751 (*Jordache*).)

Here, the undisputed evidence showed plaintiff suffered actual injury in 2002 when Paul died and plaintiff lost any interest he might have had in Paul's art collection. At Paul's death, his art collection passed to Ulrike under the terms of the Restatement, and the FLP was left without any capital, including any of Paul's art collection. Plaintiff attributes both of those occurrences to defendants' negligence. At that moment, plaintiff lost any ownership interest in Paul's art collection and was injured in the amount he claimed was his rightful share of Paul's art collection. Indeed, in his deposition plaintiff testified he felt "harmed" when Paul left nothing in the FLP at his death. None of those facts changed when a court confirmed his lack of ownership more than a decade later. Instead, the trust suit was merely an alternative way for plaintiff to recover for his alleged injury from not inheriting a portion of Paul's art collection in 2002. (See *Jordache, supra*, 18 Cal.4th at p. 755 ["[T]he determination of actual injury does not necessarily require some form of adjudication, judgment, or settlement. [Citations.] . . . [Citation.] [A] collateral suit itself may be a consequence of the alleged malpractice or simply an alternative means of obtaining relief."]; see also *Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 226 [actual injury occurred before later judgment because that litigation

"was not the first realization of an injury from the alleged malpractice, but rather the loss of an alternative means for obtaining monetary relief for that injury"].)[5]

Plaintiff also claims the limitations period was tolled due to defendants' willful concealment of the facts constituting the wrongful act or omission. His argument rests entirely on defendants' withholding of certain attorney-client privileged documents in the trustee action on the ground defendants did not represent plaintiff at the time they were drafting Paul's estate planning documents. However, as we discuss below in conjunction with plaintiff's requested continuance, the documents he identifies are not relevant to the statute of limitations issue. In any case, the undisputed facts showed defendants did *not* represent plaintiff in the course of Paul's estate planning, so their withholding of privileged documents could not have shown they *willfully* concealed any negligence from plaintiff related to Paul's estate planning. (Cf. *Wells Fargo Bank v. Superior Court* (2000) 22 Cal.4th 201, 206 (*Wells Fargo*) [trustee may assert attorney-client privilege against beneficiaries of trust].)

Thus, defendants presented undisputed facts to show the four-year limitation period in section 340.6 expired, and plaintiff failed to raise a triable issue that the period was tolled. Summary judgment to defendants was proper.

## 2. *Request for Continuance*

Plaintiff contends the trial court abused its discretion when it denied his ex parte application for a continuance so he could conduct further discovery. We disagree.

---

**5** Plaintiff argues "controlling California authority" establishes that "'in transactional legal malpractice cases, when the adequacy of the documentation is the subject of dispute, an action for attorney malpractice accrues on entry of an adverse judgment, settlement, or dismissal of the underlying action,'" citing *Jordache* and *Baltins v. James* (1995) 36 Cal.App.4th 1193, 1203. But *Jordache* expressly overruled the case *Baltins* quoted and rejected the application of any bright-line rules for when a plaintiff suffers actual injury under section 360.4. (*Jordache, supra*, 18 Cal.4th at pp. 762-763; see *id.* at p. 761, fn. 9 [disapproving of *Baltins'* suggestion any bright-line rules apply to determine actual injury].)

Pursuant to Code of Civil Procedure section 437c, subdivision (h), "[i]f it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just.  The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due."

This provision "mandates a continuance of a summary judgment hearing upon a good faith showing by affidavit that additional time is needed to obtain facts essential to justify opposition to the motion.  [Citations.]  Continuance of a summary judgment hearing is not mandatory, however, when no affidavit is submitted or when the submitted affidavit fails to make the necessary showing under [Code of Civil Procedure] section 437c, subdivision (h).  [Citations.]  Thus, in the absence of an affidavit that requires a continuance under section 437c, subdivision (h), we review the trial court's denial of appellant's request for a continuance for abuse of discretion."  (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 253-254.)  An affidavit in support of a request for continuance must show:  "'(1) the facts to be obtained are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain these facts.'"  (*Id.* at p. 254.)  "It is not sufficient under the statute merely to indicate further discovery or investigation is contemplated.  The statute makes it a condition that the party moving for a continuance show 'facts essential to justify opposition may exist.'"  (*Roth v. Rhodes* (1994) 25 Cal.App.4th 530, 548 (*Roth*).)  The trial court may also deny a continuance if the moving party was not diligent in pursuing discovery sooner.  (*Cooksey, supra*, at p. 257.)

Because the undisputed facts showed the four-year statute of limitations expired, plaintiff was entitled to a continuance only by showing he was unable to obtain discovery of facts "essential" to demonstrating the limitations period was tolled.  In his supporting declarations to the trial court, he relied on two specific items—the communication

11

reflected in entry No. 18 of defendants' privilege log in the trust action; and the enclosures to an October 14, 2002 letter from Jodi Schwartz on behalf of defendants to Paul transmitting drafts of Paul's estate planning documents. He claims entry No. 18 of the privilege log would show tolling based on willful concealment. Yet, the description of that entry states, "Confidential communication from attorney's assistant to client re confidential taxpayer information" and "Enclosure to confidential communication revealing confidential taxpayer information." He has failed to explain how a communication about "confidential taxpayer information" had any bearing on willful concealment of any negligence surrounding Paul's estate planning. Nor has he shown he could overcome the attorney-client privilege to obtain this document even if it was relevant. (See *Wells Fargo, supra*, 22 Cal.4th at p. 206.) As for the enclosures to the October 2002 letter, he argues they would refute many of defendants' allegedly undisputed facts, but all those facts go to other issues, not tolling. And again, to the extent defendants withheld these documents as privileged, plaintiff has not shown how he could obtain them in discovery. (See *ibid.*)

Plaintiff further suggested in his declaration he needed time to find an expert with "knowledge of issues surrounding the statute of limitations in trust and estates attorney malpractice/professional negligence and the issues surrounding the execution of estate plans," and who could give opinions on "the corresponding standards of care at issue in [the] current matter and whether or not the defendants met that standard in the performance of their duties." An expert on the standard of care would be irrelevant because the statute of limitations defense is dispositive. And plaintiff has not identified what "issues surrounding the statute of limitations" would require expert testimony. (See *Roth, supra*, 25 Cal.App.4th at p. 548 [affidavit requesting continuance to obtain expert opinions insufficient without "statement which suggests what facts might exist" to oppose summary judgment].)

Plaintiff also failed to demonstrate he diligently pursued discovery prior to seeking a continuance. We are not unmindful of plaintiff's predicament when his counsel withdrew and left him unrepresented a month before his opposition was due. But this

12

case had been pending for nearly a year and the date for the summary judgment hearing had been set eight months in advance, during which time plaintiff *was* represented. Plaintiff claimed his attorney "ha[d] not propounded any discovery" and had not responded to defendants' discovery,[6] but he did not explain why. Likewise, for the two specific items he cited above as "essential" to his case, he did not explain why he had not sought to compel their production at any time before his attorney withdrew, including during the trust action. On the other hand, plaintiff already had documents and testimony from the trust action, including depositions from Lurie, Pearl, Ulrike, and Kaufman, along with the documents shown to those witnesses. His counsel also had the opportunity to question Ulrike and Kaufman at their depositions in this case.

Thus, his declarations fell short of showing a continuance was mandatory under Code of Civil Procedure section 437c, subdivision (h), so the court's decision to deny a continuance was discretionary. We cannot say the court abused that discretion on these facts, even though plaintiff's attorney withdrew a month before his opposition was due.

## DISPOSITION

The judgment is affirmed. Defendants are awarded costs on appeal.


FLIER, J.

WE CONCUR:



BIGELOW, P. J.



GRIMES, J.

---

[6] This is not entirely accurate—the record contains plaintiff's responses to defendants' first set of requests for admission and form interrogatories.

13