Filed 3/21/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FIDUCIARY TRUST INTERNATIONAL OF CALIFORNIA, as Trustee, etc., et al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> CONRAD LEE KLEIN et al., <br><br>     Defendants and Appellants. | A144558 <br><br> (Los Angeles County <br>   Super. Ct. No. BP063500) |

    This is the latest appeal in a longstanding, particularly acrimonious probate matter involving the Mark Hughes Family Trust (trust). The challenged probate court order permits defendants and appellants, Conrad Lee Klein, Jack Reynolds and Christopher Pair (collectively, appellants), who are the former trustees of this trust, to withhold from the successor trustee, plaintiffs and appellants Fiduciary Trust International of California (FTI), and Alexander Hughes, the sole non-contingent trust beneficiary, some, but not all, of a collection of documents identified on a supplemental privilege log submitted by the former trustees under court order. These documents, which are from the trust's legal files and relate to two trust accountings submitted by appellants prior to their removal, were withheld by appellants from FTI on the basis of attorney-client privilege. For reasons explained below, the probate court ruling of February 4, 2015 is affirmed in part and reversed in part. The matter is remanded to the trial court for reconsideration of the privilege status of the Privilege-Upheld documents in conformity with this opinion.

1

# FACTUAL AND PROCEDURAL BACKGROUND

This probate matter has been before us on appeal numerous times over the past decade. Accordingly, in the name of judicial economy, we will not describe in full detail its lengthy procedural and factual background. Rather, we begin where our last opinion left off, before turning to the particular legal issues before us.

On April 23, 2015, we issued a final decision on appeal upholding the probate court's March 2013 decision to grant the petition of Alexander Hughes, the sole non-contingent trust beneficiary (and Mark Hughes' only child), to suspend and remove appellants as trustees. Alexander's mother and former guardian of the estate, Suzan Hughes, had initially petitioned the probate court for suspension or removal of appellants in 2004; however, her petition became moot when Alexander reached age 18.[1] (See *Hughes v. Klein*, A138983, March 30, 2015, as modified on denial of rehearing on April 23, 2015 (pet. rev. denied, June 10, 2015) (hereinafter, *Hughes v. Klein*). In upholding this decision, we affirmed the probate court's underlying finding that appellants' immediate suspension and removal were warranted due to their breach of trust in failing to exercise reasonable prudence in connection with the trust's sale of Tower Grove, a 157-acre parcel of previously undeveloped Beverly Hills real property. (*Ibid.*)

---

[1] As explained in our 2015 opinion: "Almost immediately upon Mark's death, legal disputes arose among appellants, Suzan, and others involved with Mark's Estate and Trust. To name just a few examples, Suzan, acting as guardian of the estate, sued appellants in 2001 in their capacity as executors, alleging that they had been grossly negligent in approving certain creditors' claims against the estate, including three such claims submitted by Herbalife. This litigation resulted in a $200,000, plus interest, surcharge imposed against appellants, a decision we subsequently affirmed on appeal. (*Estate of Mark R. Hughes* [ ] 2006 Cal.App.Unpub. LEXIS 8275 [Sept. 20, 2006].) In addition, in 2001 and again in 2004, when Alexander was still a minor, Suzan unsuccessfully petitioned the court on his behalf to remove appellants as Trustees. The 2001 petition was decided against Suzan on summary judgment, a ruling we affirmed on appeal. (*Hughes v. Klein*, 2004 Cal.App.Unpub. LEXIS 9683 (Oct. 25, 2004).) The 2004 petition, in turn, appears to have become moot in 2009, before trial was held, when Alexander reached age 18." (*Hughes v. Klein*, A138983, March 30, 2015, as modified on denial of rehearing on April 23, 2015 (pet. rev. denied, June 10, 2015) (2015 Cal. App. Unpub. LEXIS 2279).)

Sometime before these petitions for suspension or removal were filed, Suzan, and later Alexander, filed a series of objections to the twelve trust accountings covering the period of May 1, 2000, through March 18, 2013, that had been submitted by appellants. These objections, which are still pending and relate to the privilege dispute at the heart of this appeal, include surcharge claims against appellants totaling tens of millions of dollars.

On April 4, 2013, soon after its appointment as interim successor trustee, FTI served appellants' counsel with a demand for trust documents in their possession that included communications between appellants and legal counsel paid for with trust funds. In this letter, FTI advised appellants' legal counsel that FTI, not appellants, now held the attorney-client privilege with respect to trust matters, and demanded that counsel cease communicating with appellants regarding trust matters and refrain from disclosing to third parties any confidential or privileged communications without FTI's permission.

Shortly thereafter, FTI filed an ex parte application to compel appellants to immediately turn over all trust records in their possession. The probate court denied this application without prejudice and ordered the parties to meet and confer. Two weeks later, FTI and Alexander filed a joint motion seeking an order requiring appellants to turn over all trust property and records to FTI (hereinafter, first turnover motion).

Following a hearing on the first turnover motion, the probate court ordered appellants to prepare a privilege log with respect to any trust records in their possession withheld on the basis of attorney-client privilege. Several hearings were then held, leading to the probate court's issuance of the so-called protocol order, agreed to by all parties, that identified eight specific categories of information appellants were required to include for each document in its privilege log. This protocol order also required appellants to deliver all trust records to FTI for safekeeping in a secure area, and prohibited FTI from handling these records until appellants' counsel had an opportunity to review them for privilege. Any documents identified by counsel as privileged were

then to be segregated from other trust records pending a court ruling on the privilege claims.[2]

The first privilege log was submitted by appellants in November 2013, and identified over three thousand documents from the trust files as privileged. Several subsequent efforts by the parties to meet and confer regarding these privilege claims were not fruitful.

On April 18, 2014, FTI and Alexander filed another joint motion for an order requiring appellants to turn over all trust records in their possession, arguing that the factual showing for appellants' privilege claims was defective on its face because, inter alia, there is no privilege to withhold documents that are "defensive" in nature (hereinafter, second turnover motion). Appellants disputed their legal reasoning, and offered a declaration from attorney Oleg Stolyar that attached numerous past pleadings relating to Suzan's and Alexander's objections to their accountings and efforts to remove or suspend them. They did not, however, offer any further details regarding the communications they claimed were privileged (such as who hired the attorney or paid for the legal service, or why the attorney had been retained).

After the second turnover motion had been fully briefed, the probate court referred the matter to a discovery referee with directions to, among other things, identify all documents on the privilege log relating to the First and Second Accountings and to determine the validity of appellants' privilege claims as to those documents. The discovery referee thereafter held several hearings before issuing two reports with recommendations that the court deny in part and grant in part the second turnover motion. These reports and recommendations were ultimately rejected by the probate court.

Following another hearing on appellants' privilege claims in November of 2014, the probate court ordered appellants to prepare a supplemental privilege log with respect to any withheld documents relating to the First and Second Accountings (Alexander's

---

[2]    The required categories of information on the privilege log were as follows: type of document; document date; document subject matter; document author, recipient(s) and viewer(s); specific privilege asserted; and legal and factual basis for the privilege.

4

objections to which would first be tried before the probate court).[3] The court also ordered FTI and Alexander to submit their objections to the documents identified as privileged on the supplemental privilege log.

This supplemental privilege log – to wit, the subject of this appeal – was filed on December 8, 2014, and identified 234 documents pertaining to the First and Second Accounting as privileged.[4] Rather than object to any particular document identified as privileged, FTI and Alexander objected to the supplemental privilege log as a whole, arguing that appellants' factual showing was legally inadequate.

On February 4, 2015, the probate court issued a tentative ruling finding that appellant's supplemental privilege log permitted them to withhold some, but not all, of the identified documents. Citing the California Supreme Court decision of *Moeller v. Superior Court* (1997) 16 Cal.4th 1124, the probate court found: "The key, as all parties recognize, is whether the otherwise confidential advice was obtained as part of a trustee's administration of the trust or whether a trustee concerned about personal liability obtained counsel's advice for his or her own protection." Then, relying on this authority, the probate court rejected appellants' argument that "any objections [by Suzan or Alexander] to their accountings establish that legal advice sought in that regard is 'defensive' and therefore personal to themselves and privileged." In doing so, the court explained that "responding to questions and objections by beneficiaries regarding a fiduciary's accountings is at the very core of trust administration. And . . . if [appellants] did not see that work as part of the Trust's administration at the time, surely they would have done something to protect the privilege, as would any prudent fiduciary who felt the need to be 'defensive.' " Yet then, affording appellants "every benefit of the doubt . . . which will allow [them] to withhold those documents which they now identify as protecting them from personal liability, *specifically, the petitions for surcharge and/or removal*," [italics added] the court upheld the privilege as to 45 documents on the

---

3       As of the briefing in this case, none of Alexander's objections had been tried.

4       Appellants later voluntarily withdrew their privilege claims with respect to 39 documents.

5

supplemental privilege log, while ordering them to deliver the balance of the documents to FTI by March 5, 2015.[5]

Following a hearing, the probate court's tentative ruling became a final order, after which both parties filed timely notices of appeal.

## DISCUSSION

Both parties appeal portions of the probate court's order permitting appellants to withhold some, but not all, trust records claimed as privileged on the supplemental privilege log. Appellants, for their part, challenge as error the probate court's ruling to sustain FTI's and Alexander's objections as to all but 45 documents on the supplemental privilege log (hereinafter, Privilege-Denied Documents). FTI and Alexander, in turn, challenge as error the probate court's ruling to uphold the privilege with respect to those 45 documents on the log (hereinafter, Privilege-Upheld Documents). The legal framework for resolving this dispute is, for the most part, not in dispute.

"A trial court's determination of a motion to compel discovery is reviewed for abuse of discretion. [Citation.] An abuse of discretion is shown when the trial court applies the wrong legal standard. [Citation.] However, when the facts asserted in support of and in opposition to the motion are in conflict, the trial court's factual findings will be upheld if they are supported by substantial evidence. [Citations.]" (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733 (*Costco*).) To the contrary, the trial court's conclusions as to the legal significance of these facts are independently reviewed. (*City of Petaluma v. Superior Court* (2016) 248 Cal.App.4th 1023, 1031.)

Further, where discovery is withheld, as here, on the basis of privilege, the following well-established rules apply. "The attorney-client privilege, which is set forth

---

[5] Specifically, the tentative ruling states: "[W]here documents appear to be directed at the petitions for removal and/or surcharge, the privilege was upheld. However, in some entries it is apparent that the document was really about something else. For example, documents 're requested support payments during litigation' or 're Darcy LaPier's claim for distribution.' These descriptions continue 'in connection with which Suzan also sought surcharge claims against Trustees.' While that may be, per the description, the surcharge was not what the document addressed."

6

in Evidence Code section 954, confers a privilege on the client 'to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer.' The fundamental purpose of the privilege 'is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding legal matters.' (*Costco, supra*, 47 Cal.4th at p. 732.) The privilege is absolute and precludes disclosure of confidential communications even though they may be highly relevant to a dispute. (*Ibid.*)" (*City of Petaluma v. Superior Court, supra,* 248 Cal.App.4th at p. 1032.) " 'Although exercise of the privilege may occasionally result in the suppression of relevant evidence, the Legislature of this state has determined that these concerns are outweighed by the importance of preserving confidentiality in the attorney-client relationship." (*Costco, supra*, at p. 732.)

The party claiming the privilege, here, appellants, has "the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship. [Citations.] Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply. (Evid. Code, § 917, subd. (a); [citation].)" (*Costco, supra,* 47 Cal.4th at p. 733.)

Thus, generally speaking, the client is the holder of the privilege and, as such, has the burden of making this prima facie showing. (Evid. Code, § 953, subd. (a).) However, where, as here, a trustee is asserting the privilege, the "client" is the office of trustee rather than the particular trustee. (See *Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1129-1130 (*Moeller*).) This distinction arises from the unique relationship between a trustee and trust beneficiary. Specifically, under the Probate Code, a trustee is deemed to possess all "powers conferred by the trust instrument" (Prob. Code, § 16200), as well as a number of specific powers and duties. For example, "[t]he trustee has a duty to keep the beneficiaries of the trust reasonably informed of the trust and its administration." (Prob. Code, § 16060.) In addition, the trustee has a duty "on

7

reasonable request" to provide the beneficiaries with complete and accurate information regarding that acts of the trustee and the particulars "relating to the administration of the trust relevant to the beneficiary's interest." (Prob. Code, § 16061.) Relevant here, trustees are thus required to "keep the trust property separate from other property not subject to the trust" and to "see that the trust property is designated as property of the trust." (Prob. Code, § 16009.)

As our state Supreme Court further explains, this statutory framework "implicitly authorizes a trustee to become an attorney's client and to claim the attorney-client privilege." (*Moeller, supra,* 16 Cal.4th at p. 1129.) A trustee may, among other things, hire attorneys for the trust "to advise or assist the trustee in performance of administrative duties." (Prob. Code, § 16247.) A trustee may also "prosecute or defend actions, claims, or proceedings for the protection of trust property and of the trustee in the performance of the trustee's duties." (Prob. Code, § 16249.) Further, if, as here, the trustee resigns or is removed, the trustee "has the powers reasonably necessary under the circumstances to preserve the trust property," including the trust's legal files, "until it is delivered to the successor trustee and to perform actions necessary to complete the resigning or removed trustee's administration of the trust." (Prob. Code, § 15644.)

Here, of course, we have a situation in which appellants, after being removed from the office of trustee, refused to deliver trust files to successor trustee FTI on the basis of the attorney-client privilege. Relying on *Moeller*, appellants insist they are entitled to withhold the privilege-claimed documents under a narrow exception to the discovery rule, recognized by the high court, where a trustee seeks or obtains legal advice in its personal capacity. FTI and Alexander, while vehemently disagreeing, nonetheless acknowledge that *Moeller* is the controlling authority. We agree with the parties that *Moeller* provides the legal framework for resolution of their dispute.

In *Moeller,* the California Supreme Court drew a distinction between "confidential communications [occurring] when a predecessor [trustee], *in its fiduciary capacity*, sought the attorney's advice *for guidance in administering the trust*," on the one hand, and confidential communications occurring when the predecessor "seeks legal advice in

8

its personal capacity out of a genuine concern for possible future charges of breach of fiduciary duty," on the other hand. With respect to the first category of communications, "the power to assert the privilege . . . as to those confidential communications moves to successor trustee." (*Moeller, supra,* 16 Cal.4th at p. 1134.) With respect to the latter, "the predecessor [trustee] may be able to avoid disclosing the advice to a successor trustee by hiring a separate lawyer and paying for the advice out of its personal funds." (*Moeller, supra,* 16 Cal.4th at p. 1134.)

The reason for this distinction is grounded in general principles of California probate law. The "powers of a trustee are not personal to any particular trustee but, rather, are inherent in the office of trustee. It has been the law in California for over a century that a new trustee 'succeed[s] to all the rights, duties, and responsibilities of his predecessors.' (*Fatjo v. Swasey* (1896) 111 Cal. 628, 636 [44 P. 225] . . . ; see also *Baumann v. Harrison* (1941) 46 Cal.App.2d 84, 93 [115 P.2d 530].) In accord is the Restatement Second of Trusts section 196, page 431: 'The powers conferred upon a trustee can properly be exercised by his successors, unless it is otherwise provided by the terms of the trust.' California courts have explicitly adopted this rule as the law of this state. (See *Estate of De la Montanya* (1948) 83 Cal.App.2d 322, 328 [188 P.2d 494]; *Estate of Canfield* (1947) 80 Cal.App.2d 443, 447 [181 P.2d 732].) The rule applies, of course, to powers essential to effective administration of the trust. (Rest.2d Trusts, § 196, com. b.)" (*Moeller, supra,* 16 Cal.4th at p. 1131.)

One of the powers essential to effective trust administration has already been mentioned — to wit, the trustee's power to hire attorneys for the trust "to advise or assist the trustee in performance of administrative duties." (Prob. Code, § 16247.) This power, in turn, gives rise to the power to assert the privilege. As the California Supreme Court explains, "the power to assert the attorney-client privilege follows from the trustee's power to hire an attorney in order to obtain advice regarding administration of the trust and to litigate to protect trust property. The trustee's power to assert that privilege thus is certainly essential to its effective administration of the trust. Therefore, when a successor trustee takes office it assumes all of the powers of trustee, including the power to assert

the privilege with respect to confidential communications between a predecessor trustee and an attorney on matters of trust administration." (*Moeller, supra,* 16 Cal.4th at p. 1131.)

In this case, the parties both take issue with the trial court's resolution of appellants' privilege claims. The point of disagreement among the parties is how one distinguishes between confidential communications occurring when the trustee seeks legal advice or guidance on matters of trust administration, and those occurring when the trustee seeks legal advice or guidance in its personal capacity out of a genuine concern for possible future charges of breach of fiduciary duty. FTI and Alexander argue that a former trustee is required to turn over all communications, including privileged communications, in the trust's legal files unless they can demonstrate that they retained the counsel with whom they communicated in a personal capacity and took affirmative steps to distinguish the purported personal advice from advice obtained in a fiduciary capacity, citing *Moeller, supra,* 16 Cal.4th at page 1139. Appellants, in turn, contend that attorney-client communications can be withheld as privileged so long as the communications are relevant to the defense of actual or anticipated charges raised by the beneficiary against them rather than to trust administration matters, citing *Moeller, supra,* 16 Cal.4th at pages 1134-1135. (See also Rest.2d Trusts, § 173 & com. (b) [a trustee is "privileged to refrain from communicating to the beneficiary opinions of counsel obtained by him at his own expense and for his own protection"].) We conclude the approach taken by FTI and Alexander is more consistent with *Moeller*, as well as the general underlying principle that the party claiming privilege has the burden to establish the preliminary facts necessary to support its exercise. (See *Costco, supra,* 47 Cal.4th at p. 733.)

In particular, we conclude the flaw in appellants' position is that it endorses a hindsight approach where the description of the communication, i.e., whether it can be described as "defensive" in nature rather than administrative, determines the validity of a privilege claim. Relying upon this approach, appellants insist their failure to take any affirmative steps to distinguish, prior to asserting the privilege, the self-described

10

"defensive" communications from "administrative" communications is, even if regrettable, not significant. In doing so, appellants point out that because of their acrimonious relationship with Suzan and, later, Alexander, they have had to operate the trust "subject to anticipated or pending litigation since the *first year* of their trust administration, and have [done so] while defending against a constant stream of petitions from Suzan (and then Alexander) to suspend, remove, and/or surcharge them." Further, they insist, if FTI or Alexander objects to their withholding of a particular communication, they can seek in camera review from the probate court to ensure the validity of the privilege claim.

FTI and Alexander, to the contrary, frame the dispositive issue as whether the "character of the *relationship* between the trustee and counsel [is] personal or fiduciary." We agree with this approach. First, as the California Supreme Court has made clear, a communication is "confidential" if it contains " 'information transmitted between a client and his or her lawyer in the course of [the attorney-client] relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted . . . .' (Evid. Code, § 952.)" (*Costco, supra* 47 Cal.4th at p. 733.) "In assessing whether a communication is privileged, the initial focus of the inquiry is on the '*dominant purpose of the relationship*' between attorney and client and not on the purpose served by the individual communication." (*City of Petaluma v. Superior Court, supra,* 248 Cal.App.4th at p. 1032, italics added; see also *Costco, supra* 47 Cal.4th at pp. 739-740.) Appellants' approach, which focuses on the label ascribed to communication rather than the purpose of the relationship between attorney and client that gave rise to the communication, is thus contrary to California law.

We also agree with FTI (and Alexander) that *Moeller requires* a trustee to take certain affirmative steps to preserve its right to rely upon the attorney-client privilege as the basis for withholding from the successor trustee confidential documents maintained in

11

the trust's legal files.  *Moeller* explains these affirmative steps as follows:  "[T]he successor trustee inherits the power to assert the privilege only as to those confidential communications that occurred when the predecessor, *in its fiduciary capacity*, sought the attorney's advice *for guidance in administering the trust*.  If a predecessor trustee seeks legal advice in its personal capacity out of a genuine concern for possible future charges of breach of fiduciary duty, the predecessor may be able to avoid disclosing the advice to a successor trustee by hiring a separate lawyer and paying for the advice out of its personal funds. . . . [¶] We recognize that the distinction between these two types of confidential trustee-attorney communications — administrative, on the one hand, and defensive, on the other — may not always be clear.  Yet *to require a trustee to distinguish, scrupulously and painstakingly, his or her own interests from those of the beneficiaries is entirely consistent with the purpose of a trust*.  [Italics added.]  Moreover, a trustee can mitigate or avoid the problem by retaining and paying out of his or her own funds separate counsel for legal advice that is personal in nature." (*Moeller, supra,* 16 Cal.4th at pp. 1134-1135.)[6]

As this excerpt reflects, while the California Supreme Court declined to provide specific instructions as to how a trustee must handle privileged communications, it is nonetheless clear the court expects a trustee to undertake some process to establish that a trust communication was intended to be confidential at the time the communication was elicited or obtained from counsel, not, as here, many months or years later when a communication is actually withheld on privilege grounds.[7]  Thus, even accepting

---

[6]     In *Moeller*, the high court noted that "the instant case does not appear to be one in which [the prior trustee's] fiduciary and personal capacities do overlap. . . .  Nothing in the record suggests [he] obtained any of those services in defense of actual or anticipated charges against it of misconduct by the beneficiaries of the Moeller trust." (16 Cal.4th at p. 1135.)

[7]     Appellants' vehement insistence that *Moeller* does not require them to prove the legal advice was paid for with personal funds is a red herring.  All parties correctly agree that, under *Moeller*, proof that a predecessor trustee paid for legal advice with personal funds is material to, but not dispositive of, the issue of whether a particular attorney-client communication is privileged. (*Moeller, supra*, 16 Cal.4th at p. 1135.)  As the

12

appellants' argument that neither physical segregation of documents nor payment of legal services with non-trust funds is mandated under *Moeller*, the fact remains actual steps must be taken to identify a communication as privileged when the communication is "sought" from the trustee's personal counsel. (See *Moeller, supra,* 16 Cal.4th at p. 1134.) Any other rule would unduly interfere with the successor trustee's ability to discharge its fiduciary duty to the beneficiary when acting to administer the trust or preserve trust property. As *Moeller* explains: "A successor trustee is liable to the beneficiaries for a predecessor trustee's breach of trust if the successor unreasonably allows the breach to continue or does not take reasonable steps to redress it. (§ 16403, subds. (b)(1), (3).) *The Probate Code thus imposes a duty on a successor trustee, on pain of personal liability for neglect, to make reasonable inquiry into the predecessor trustee's administration of the trust and remedy any breaches, in order thereby to preserve the trust estate for the benefit of the beneficiaries. To make this inquiry, the successor trustee must have access to the trust's legal files*. . . . [I]f the predecessor trustee were allowed to block the successor's access to those files, the successor trustee could be seriously hampered in the discharge of this duty, and the trust estate could thereby be irreparably damaged, to the

California Supreme Court explains: "Payment of fees does not determine ownership of the attorney-client privilege. The privilege belongs to the holder, which in this context is the attorney's client. (Evid. Code, § 954, subd. (a).) As discussed above, the *trustee*, rather than the beneficiary, is the client of an attorney who gives legal advice to the trustee, whether on the subject of trust administration [citations] or of the trustee's own potential liability (cf. *Moeller*, *supra*, at p. 1135). To the extent the source of payment has any significance, it is but one indicium in determining the existence of an attorney-client relationship [citation] and, thus, who holds the privilege. In any event, the assumption that payment of legal fees by the trust is equivalent to direct payments by beneficiaries is of dubious validity. [Citation.] Under California law, a trustee may use trust funds to pay for legal advice regarding trust administration (Prob. Code, § 16247) and may recover attorney fees and costs incurred in successfully defending against claims by beneficiaries [Citations]). When the law gives the trustee a right to use trust funds, or to reimbursement, the funds do not in law belong to the beneficiaries. Conversely, if the trustee's expenditures turn out to have been unauthorized, the beneficiaries may ask the probate court to surcharge the trustee. But this question of cost allocation does not affect ownership of the attorney-client privilege." (*Wells Fargo v. Superior Court* (2000) 22 Cal.4th 201, 213.)

13

detriment of the beneficiaries.  Therefore, vesting the attorney-client privilege in the current trustee best comports with the terms of the Probate Code and with its underlying policy that trustees always are to act in the best interests of the beneficiaries.  (See § 16002, subd. (a).)"  (*Moeller, supra,* 16 Cal.4th at pp. 1137-1138, italics added, fn. omitted.)

Thus, even assuming for the sake of argument appellants are correct that a trustee's reporting or other fiduciary duties do not trump the attorney-client privilege (see *Wells Fargo v. Superior Court* (2000) 22 Cal.4th 201, 208)[8], it is not true that a trustee is entitled, after resigning or being removed, to rely on this privilege as a basis to withhold documents in the trust's legal files without making the requisite prima facie showing that these documents are indeed privileged.  (See also *Costco, supra*, 47 Cal.4th at p. 733.)

Turning our attention back to the record at hand, it is clear on this record that the probate court did not hold appellants to their burden to show preliminary facts in support of their privilege claims.  In finding 40-some communications identified in the supplemental privilege log to be privileged, the court reasoned as follows:  "[Appellants] argue that all the documents they withheld are protected because they are 'defensive,' but labeling a document as 'defensive' does not by itself fulfill the criteria described in *Moeller*.  If that were enough, the exception would indeed swallow the rule, and the Supreme Court was clear that it is a narrow exception.  Further, the burden falls on the prior trustee claiming the privilege 'to distinguish, scrupulously and painstakingly, his or her own interests from those of the beneficiaries.' [*Moeller*] at 1134.  [¶] . . . [T]he *Moeller* opinion was issued in 1997, prior to their taking office as trustees of the Hughes

---

[8]    As the California Supreme Court has explained, while courts outside California may give a trustee's reporting duties precedence over the attorney-client privilege, in California it is well-settled that "the attorney-client privilege is a legislative creation, which courts have no power to limit by recognizing implied exceptions."  (*Costco, supra,* 47 Cal.4th at p. 739; see *Wells Fargo v. Superior Court, supra,* 22 Cal.4th at p. 209 ["What courts in other jurisdictions give as common law privileges they may take away as exceptions.  We, in contrast, do not enjoy the freedom to restrict California's statutory attorney-client privilege based on notions of policy or ad hoc justification"].)

Trust. At all times, [appellants] retained very competent outside counsel to advise them, and one of [the appellants] is himself an attorney." Indeed, the court noted, while appellants were undoubtedly aware of the *Moeller* holding, they nonetheless ignored its mandate to take steps to distinguish their personal attorney-client communications from trust records.

We wholeheartedly agree with the probate court's statement. Yet, our record reflects the court failed to actually hold appellants to their burden under *Moeller* and *Costco* (at least in a uniform manner). While the court recognized in sustaining FTI's and Alexander's objections to the supplemental privilege log that it is not enough to merely describe a communication as "defensive," the court nonetheless accepted this labeling so long as the communication was described in the log as relating to a petition for removal or surcharge. We, however, fail to see how adding the language "petition for removal or surcharge" suffices to make the requisite showing that a particular communication reflects legal advice obtained by appellants from their personal counsel for their own protection and out of concern for their personal liability. As the probate court itself noted, one of the trustee's primary duties is to "respond[ ] to questions and objections by beneficiaries regarding a fiduciary's accountings." In addition, the probate court grants a trustee the authority to "prosecute or defend actions, claims, or proceedings for the protection of trust property and of the trustee in the performance of the trustee's duties." (Prob. Code, § 16249.) As such, the mere fact that a communication relates, however broadly, to a petition for surcharge or removal does not prove that the legal advice contained within the communication was *sought or obtained* by the predecessor trustee out of concern for personal liability as opposed to concern for the general health of the trust. We can think of a multitude of situations where a trustee might communicate with a trust attorney regarding a beneficiary's anticipated or actual objections to a trustee's acts or omissions in the discharge of its fiduciary duties. (See *Kasperbauer v. Fairfield* (2009) 171 Cal.App.4th 229, 234-235 [" '[T]he Probate Code is studded with provisions authorizing the trustee to hire and pay (or seek reimbursement for having paid) attorneys to assist in trust administration. For example, [Prob. Code §] 16247 empowers

15

the trustee "to hire persons, including . . . attorneys . . . or other agents . . . to advise or assist the trustee in the performance of administrative duties." Section 16243 provides, "The trustee has the power to pay . . . reasonable compensation of the trustee and of employees and agents of the trust, and other expenses incurred in the . . . administration . . . and protection of the trust." And [Prob. Code §] 15684, subdivision (a) provides in part, "A trustee is entitled to the repayment out of the trust property for . . . [¶] [e]xpenditures that were properly incurred in the administration of the trust" ' "]. Accord Prob. Code, § 15644.) If this trustee is subsequently removed, as occurred here, a communication on this subject may indeed be "defensive" in nature. However, contrary to appellants' argument, it is not the content or nature of the communication, or the fact that the communication later becomes relevant to the issue of the trustee's personal liability, that is dispositive under California privilege law; rather, it is the fact that, at the time the legal advice was sought, the purpose of obtaining the advice was protection against personal liability. (*City of Petaluma v. Superior Court, supra,* 248 Cal.App.4th at p. 1032, ["In assessing whether a communication is privileged, the initial focus of the inquiry is on the 'dominant purpose *of the relationship*' between attorney and client and not on the purpose served by the individual communication"].)

As *Moeller* aptly explains: "*We recognize that, under the rule we adopt, a trustee must take into account the possibility that its confidential communications with an attorney about trust administration may someday be disclosed to a successor trustee. This is, however, not unfair in light of the nature of a trust and the trustee's duties.* [Italics added.] A trust is a fiduciary relationship with respect to property in which the person holding legal title to the property — the trustee — has an equitable obligation to manage the property *for the benefit of another* — the beneficiary. [Citations.] A trustee must always act *solely* in the beneficiaries' interest. (§ 16002, subd. (a); [citation].) If the trustee violates *any* duty owed to the beneficiaries, the trustee is liable for breach of trust. (§ 16400.) . . . In a trust relationship, then, the benefits belong to the beneficiaries and the burdens to the trustee. The office of trustee is thus by nature an onerous one, and the proper discharge of its duties necessitates great circumspection. Liability to

16

beneficiaries for mismanagement of trust assets is merely one of the burdens professional trustees take on — for, presumably, an appropriate fee." (*Moeller, supra,* 16 Cal.4th at pp. 1133-1134.)

Thus, because it is clear on this record the probate court failed to consistently and appropriately apply the legal standards prescribed by the California Supreme Court in *Moeller* and *Costco*, an abuse of discretion has occurred. (*Costco, supra,* 47 Cal.4th at p. 733 ["An abuse of discretion is shown when the trial court applies the wrong legal standard"].) Moreover, we agree with FTI and Alexander that the supplemental privilege log, as it stands, provides insufficient details regarding the underlying documents to permit us to conclude on this record that appellants made the requisite preliminary factual showing to support their privilege claims with respect to the Privilege-Upheld Documents. Thus, insofar as the challenged order upheld the privilege with respect to those documents, the order must be reversed and the matter remanded for reconsideration under the correct standard. Because the limited description provided with respect to the Privilege-Denied Documents was sufficient to confirm that these documents were exchanged in connection with trust administration and not with the trustees in their personal capacities (see footnote 5, *ante*), the challenged order is affirmed with respect to those documents.

## DISPOSITION

The probate court ruling of February 4, 2015 is affirmed in part and reversed in part. The matter is remanded to the trial court for reconsideration of the privilege status of the Privilege-Upheld documents in conformity with this opinion. Each side will bear its own costs on appeal.

_____
Jenkins, J.

We concur:

17

_____

McGuiness, P. J.


_____

Pollak, J.


*In The Matter Of The Mark Hughes Family Trust*, A144558

| | |
|---|---|
| Trial Court: | Los Angeles County Superior Court |
| Trial Judge: | Hon. Lesley C. Green, Judge |
| Counsel for Plaintiffs and Appellants Fiduciary Trust International of California, as Trustee, etc., et al.: | Richard Denis Cleary |
| Counsel for Alexander Hughes, Trust Beneficiary: | Eric Victor Rowen, Scott Donald Bertzyk, Lisa Christine McCurdy, GREENBERG TRAURIG<br><br>Marlyn Mason Gates |
| Counsel for Defendants and Appellants Conrad Lee Klein et al.: | Rex S. Heinke, Edward A. Woods, Oleg Stolyar AKIN GUMP STRAUSS HAUER & FELD LLP |

*In The Matter Of The Mark Hughes Family Trust*, A144558