Filed 5/29/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THOMAS E. MORGAN, as Trustee, etc.,<br><br>  Petitioner,<br><br>  v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>  Respondent;<br><br>NANCY MORGAN SHURTLEFF et al.,<br><br>  Real Parties in Interest. | G055377<br><br>(Super. Ct. No. 30-2014-00726771)<br><br>O P I N I O N |

Original proceedings; petition for a writ of mandate to challenge orders of the Superior Court of Orange County, Kim R. Hubbard, Judge. Petition denied.

Law Offices of Richard Pech, Richard Pech; Greenberg Taurig and Scott D. Bertzyk for Petitioner.

No appearance for Respondent.

Garvey Schubert Barer, Bruce A. McDermott and Daniel J. Vecchio for Real Parties in Interest Nancy Morgan Shurtleff, John Morgan, Jessica Shurtleff, and Kathleen Shurtleff.

Roehl & Glowacki, Cynthia V. Roehl, John P. Glowacki; Carico Macdonald Kil & Benz, Christopher D. Carico and William G. Benz for Real Parties in Interest Bruce Hitchman and Lee Ann Hitchman.

*          *          *

## INTRODUCTION

The Probate Code provides that a trust's provisions may not absolve a trustee from liability due to intentional misconduct, gross negligence, or reckless indifference. The trust instrument here purports to allow the former trustee to withhold from a successor trustee all of his or her communications with legal counsel. Consistent with statute and case law, we hold a trust may not allow a former trustee to withhold from a successor trustee all communications between that former trustee and the trust's legal counsel. The attorney-client privilege vests in the office of the trustee, not in any particular person. A provision permitting a trustee to withhold documents from a successor trustee violates public policy and is unenforceable. Allowing a former trustee to withhold from a successor trustee communications with the trust's former legal counsel would permit a trustee to intentionally (or with gross negligence or reckless indifference) violate duties with no check on his or her conduct.

The trial court ordered the former trustee to turn over specified communications with the trust's former legal counsel to the successor trustees and their current legal counsel. The former trustee seeks a writ of mandate to reverse the trial court's order. We deny the petition.

2

## A. The Trust

Beverly C. Morgan (Beverly)[1] amended and completely restated the Beverly C. Morgan Family Trust on November 6, 2013 (the Trust). Beverly had three adult children: Thomas Edward Morgan III (Thomas), Nancy Morgan Shurtleff (Nancy), and John Evans Morgan (John). Nancy, John, and Nancy's daughters Kathleen Shurtleff and Jessica Shurtleff are referred to collectively as the Shurtleffs. Beverly was the initial trustee of the Trust. Thomas was named as the successor trustee.

## B. Beverly Dies; Thomas Becomes Trustee.

Beverly died in January 2014, and Thomas succeeded her as trustee. Litigation began almost immediately thereafter. In May 2014, Nancy filed a petition to construe the Trust's terms, asking that the Trust be reformed or invalidated on grounds of lack of capacity, undue influence, and fraudulent misrepresentations. Nancy filed another petition in September 2014 asking that the Trust be reformed or invalidated, that Thomas be deemed to have predeceased Beverly, and that Thomas be removed as trustee, among other things. In November 2014, Nancy filed a petition to remove Thomas, suspend his powers as trustee, and direct Thomas to turn over the Trust's assets and records to Nancy or to a temporary trustee.

Two years later, Nancy filed a new motion to suspend Thomas as trustee based on his alleged misuse of his powers to further his own litigation goals and strategies to the detriment of the Trust's other beneficiaries. Nancy alleged that Thomas spent Trust funds on his personal attorneys, engaged in self-dealing as trustee by using Trust funds for his personal benefit, and caused businesses owned by the Trust to engage in undocumented, inter-company, interest-free "loans" totaling millions of dollars.

---

[1] Many of the individuals involved in this appeal share a surname. For clarity, we will use first names; we intend no disrespect.

The trial court denied the motion to suspend Thomas, conditioned on the following: (1) Thomas would not use Trust funds to pay for his personal defense in the litigation with the Shurtleffs; (2) Thomas would not in any way impair the Trust assets and would not cause the Trust to borrow money; and (3) Thomas would file an accounting of all Trust assets used to pay his personal litigation expenses and of all loans made by or to the Trust. After Thomas filed the accounting, the court, sua sponte, issued an order finding the accounting was "so inadequate that its filing appears to be for the sole purpose of paying lip service to the Court's Order."

### C. The Trial Court Suspends Thomas as Trustee; the Hitchmans are Named Interim Co-trustees.

On April 4, 2017, the court suspended Thomas as trustee and appointed Bruce Hitchman and Lee Ann Hitchman of Hitchman Fiduciaries (the Hitchmans) as interim co-trustees. The court ordered Thomas to cooperate with the Hitchmans, and specifically ordered Thomas to "transfer and deliver to the Interim Co-Trustees all communications, including, but not limited to, letters, e-mails, facsimile transmissions, and text messages between Thomas Morgan and any person or entity on behalf of the Trust; [¶] . . . [¶] deliver to the Interim Co-Trustees any and all current and historical account statements, cancelled checks, documents and records concerning the Beverly C. Morgan Family Trust, its transactions and its assets."

Between April and June, the Hitchmans filed three status reports in which they informed the court: "Counsel for the Suspended Trustee has indicated that he does not intend to turn over attorney-client communications or billing invoices." Thomas and his counsel refused to turn over the requested documents based on language in paragraph 10.11 of the Trust, and statutory and case law.

4

**D. The Trial Court Orders Thomas to Give Documents to the Hitchmans and the Hitchmans' Counsel.**

The trial court held a trial setting conference and review hearing in June 2017. After discussing Thomas's refusal to provide the Hitchmans with communications between Thomas and the Trust's counsel while Thomas was trustee, the court stated: "[T]here is to be a turnover of invoices, billing statements, and fee agreements. . . . [¶] Those will be produced to the Hitchmans only, not for review by other counsel. I don't want to see redactions, but once the issue of whether or not these fees were paid personally—and by the way, counsel, I think you are incorrect. As the trustee, he has a duty to know what's going on. As the trustee, he has a duty to not pay his own fees, whether he's the sole beneficiary or not, until the matter has been wound up. And it has not been wound up here and we don't know how this is going to fall out. [¶] . . . [¶] . . . He, as a fiduciary, [cannot] use trust assets to pay his own trust expense, I don't care if he was a sole beneficiary or not, it would have been inappropriate." The minute order following that hearing reads, in relevant part: "All invoices, billings, fee agreements, copies of checks and wire transfers used to pay any of the [*sic*] mentioned herein are to be turned over to the Hitchmans and their attorney only."

When the hearing reconvened two days later, the issue of the billing statements and invoices came up again.

"Mr. Garrett [counsel for John, Jessica Shurtleff, and Kathleen Shurtleff]: It's extremely important on the preserve and protect aspect that those billing records be turned over. They will fight tooth and nail about that and that was the reason for the ex parte today. [¶] . . . [¶]

"The Court: How soon can you provide the records?

"Mr. Pech [Thomas's counsel]: Which records, your honor?

"The Court: The ones I ordered Monday.

5

"Mr. Pech:  The ones you ordered Monday?  You mean my invoices, your Honor?

"The Court:  Yes.

"Mr. Pech:  That's correct.  So we'll have a formal order today; correct?  We're going to have a formal order as to everything the court has ordered for Monday and today?

"The Court:  The minute order's right here, counsel.  We'll be happy to give [you] a copy.  [¶] [As read]:  [¶] . . . [¶] [F]or your fees, counsel, all invoices, billing[s,] fee agreements, copies of checks and wire transfers used to pay any of the attorneys' fees and costs mentioned herein.  [¶] . . . [¶]

"Mr. Pech:  And also, your Honor, as part of that, when the court said on Monday, it only goes to Mr. Glowacki [Hitchmans' counsel] here because obviously Mr. Garrett—

"The Court:  It's in the order.

"Mr. Pech:  Well, but is that in the order—

"The Court:  Yes.

"Mr. Pech:  —it only go[es] to Mr. Glowacki?  But obviously Mr. Garrett wants to see those because that's what he just said.

"The Court:  I have ordered it only goes to Mr. Glowacki at this time.  I will order that for Monday.

"Mr. McDermott [Nancy's counsel]:  We do not want to see them at this time so I made clear that—

"The Court:  So when can you have those available?

"Mr. Pech:  When I get the order, your Honor.

"The Court:  We're giving you the minute order today, counsel.

"Mr. Pech:  That's fine.

"The Court:  When can you have that available?

6

"Mr. Pech: I would say that I can go ahead and organize things in terms of like maybe a week from July 4th, something of that sort, the week of—week of the 10th.

"The Court: All right. Monday the 10th.

"Mr. Pech: How about the 12th?

"The Court: Two weeks from today, everything will be turned over.

"Mr. McDermott: When you say 'everything,' you're talking about the invoices, not the production of the entities' documents?

"The Court: I'm talking about everything in the minute order that I made on Monday.

"Mr. McDermott: Okay.

"The Court: That's all the invoices from his office, yes. [¶] . . . [¶]

"The Court: Mr. Pech—

"Mr. Pech: Yes.

"The Court: —we have ordered and you've agreed that all of your documents will be provided by July 12th—

"Mr. Pech: That's correct, your Honor."

Following the hearing, the trial court entered a minute order that reads, in relevant part: "The Court further orders attorney Richard Pech [Thomas's attorney] to provide all documents indicated in the 6/26/2017 minute order of this court to attorney John Glowacki [the Hitchmans' attorney] on or before 7/12/2017. The Court clarifies the 6/26/2017 minute order of the documents to be provided are invoices, billings, fee agreements, copies of checks and wire transfers used to pay any attorney fees and costs."

The Hitchmans' counsel submitted a proposed formal order, which mirrored the trial court's minute order. Thomas filed objections to the proposed order; as to the invoices, billing statements, fee agreements, and documents evidencing payment for attorney fees, Thomas objected on the grounds (1) the order was contrary to the law, citing *Wells Fargo Bank v. Superior Court* (2000) 22 Cal.4th 201, 209 (*Wells Fargo*) and

7

*Fiduciary Trust Internat. of California v. Klein* (2017) 9 Cal.App.5th 1184, 1197 (*Fiduciary Trust*), and (2) "there is no jurisdictional basis for this part of the Proposed Order."

The trial court entered its formal order, impliedly overruling Thomas's objections, and reading in relevant part: "The Suspended Trustee shall comply with the April 4, 2017, Order by transferring and delivering to the Interim Co-Trustees, no later than July 12, 2017, all original, unredacted attorney invoices, billing statements, fee agreements, and checks/wire transfers for payments for all attorney's fees and costs incurred and/or paid by the Suspended Trustee and paid or payable to any attorney; however, the Interim Co-Trustees shall not distribute these materials to Nancy Morgan, John Morgan, Kathleen Shurtleff, Jessica Shurtleff, or their respective counsel." The court also set a hearing on an order to show cause for contempt against Pech and Thomas for their refusal to obey the court's order after Pech affirmatively stated on the record that he would do so.

### E. Thomas Refuses to Comply and Files a Petition in the Appellate Court Challenging the Trial Court's Order.

Thomas filed a petition for a writ of mandate and/or prohibition in this court from the formal order, as well as the minute order, on the ground that the orders improperly require him to turn over documents protected by the attorney-client privilege.

DISCUSSION

### A. Trust Law

When a trustee seeks legal advice on behalf of a trust, the trustee is the client and has the right to assert or waive the attorney-client privilege. The privilege vests in the office of the trustee, not in a particular person. Therefore, the right to assert the privilege is transferred from a trustee to his or her successor trustee. (*Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1130-1131.)

8

With respect to the trustee's liability, the Probate Code provides that while the settlor may, through the trust's language, relieve the trustee of liability for breach of trust, the trustee may not be relieved of liability for intentional misconduct, gross negligence, or reckless indifference. "(a) Except as provided in subdivision (b), (c), or (d), the trustee can be relieved of liability for breach of trust by provisions in the trust instrument. [¶] (b) A provision in the trust instrument is not effective to relieve the trustee of liability (1) for breach of trust committed intentionally, with gross negligence, in bad faith, or with reckless indifference to the interest of the beneficiary, or (2) for any profit that the trustee derives from a breach of trust." (Prob. Code, § 16461, subds. (a) & (b).)

The Restatement of Trusts also provides that a trust may not relieve a trustee of liability for intentional malfeasance: "Occasionally the terms of a trust provide that the trustee shall have no accountability for his or her conduct in the administration of the trust. Assuming that the settlor intended to create a trust relationship, however, this does not preclude the beneficiaries from holding the trustee liable for a breach of trust or otherwise accountable for the trust property and its administration. A trust provision of this type may be interpreted as having the same effect as an exculpatory clause, and thus as being subject to the same limitations." (Rest.3d Trusts, § 83, com. d, pp. 206-207.)

Further, "[n]otwithstanding the breadth of language in a trust provision relieving a trustee from liability for breach of trust, for reasons of policy trust fiduciary law imposes limitations on the types and degree of misconduct for which the trustee can be excused from liability. Hence, an exculpatory clause cannot excuse a trustee for a breach of trust committed in bad faith. Nor can the trustee be excused for a breach committed with indifference to the interests of the beneficiaries or to the terms and purposes of the trust—that is, committed without reasonable effort to understand and conform to applicable fiduciary duties. In some situations, courts have, not inappropriately, sought to distinguish between simple and gross negligence, while

9

authorities in analogous contexts have emphasized fiduciaries' sustained inattention to their duty of care." (*Id.*, § 96, com. c, pp. 29-30.) And again: "It is contrary to sound policy, and a contradiction in terms, to permit the settlor to relieve a *trustee* of all accountability. . . . Even under the broadest grant of fiduciary discretion, a trustee must act honestly and (as cases have sometimes quoted from prior Restatements) 'in a state of mind contemplated by the settlor.' What this means is that courts will intervene to prevent trustees from acting in bad faith, or without regard to the terms and purposes of the trust or the interests of its beneficiaries, or for some purpose or motive other than the accomplishment of the purposes of the discretionary power. Except to the extent the power is for the personal benefit of a beneficiary-trustee, the court may also be called upon to prevent the trustee from failing to act, whether capriciously, arbitrarily, or from a misunderstanding of the trustee's powers or duties." (*Id.*, § 87, com. d, p. 246.)

### B. The Beverly C. Morgan Trust

In this case, the language of the Trust is consistent with the Probate Code and the Restatement to the extent the Trust shows Beverly's intent *not to absolve* Thomas of liability for intentional misconduct, gross negligence, or acts taken in bad faith or with reckless indifference to the interests of the Trust's beneficiaries. By way of example:

1. The Trust's grant of the right of reimbursement and indemnification to the trustee provides: "[A] Trustee shall not be indemnified or reimbursed with respect to any expense, loss, damage, or claim incurred by reason of any breaches of trust, by acts or omissions, committed intentionally, with gross negligence, in bad faith, or with reckless indifference to the interests of the beneficiaries."

2. The portion of the Trust authorizing acts by the trustee that would otherwise be conflicts of interest provides: "This limitation on the duties of loyalty, to avoid conflicts of interest and not to undertake an adverse trust relationship shall not apply in the event of willful neglect, willful misconduct or bad faith."

10

3.  The limitation on the trustee's personal liability for good faith efforts in administering the Trust provides:  "Notwithstanding the foregoing, a Trustee shall be personally liable for his or her breach of trust by acts or omissions, committed intentionally, with gross negligence, in bad faith, or with reckless indifference to the interests of the beneficiaries, and as to any profit that the Trustee derives from any breach of trust."

If the Trust purported to absolve Thomas of *any liability* as successor trustee, we would have to interpret that provision as void as it would be in contravention of clear public policy and contrary to the language of the Trust.  (See *Tunstall v. Wells* (2006) 144 Cal.App.4th 554, 564 [before a court may invalidate a trust instrument based on conflict with public policy, that public policy must be "sufficiently clear"].)  But what if the Trust's terms permit Thomas to prevent a successor trustee from obtaining the documents by which they might establish Thomas's malfeasance, bad faith, or intentional misconduct?  Are Trust provisions that may, in effect, *absolve Thomas from liability* also void because they are in contravention of public policy or contrary to the terms of the Trust?

Paragraph 10.11 of the Trust, which is the focus of this matter, reads, in full, as follows:  "10.11 Consultation with Legal Counsel.  The Trustee may retain and consult with legal counsel on any matters related to the administration of the trusts created under this Declaration of Trust or the construction or interpretation of this Declaration of Trust, and I encourage the Trustee to do so.  The Trustee may select the legal counsel to advise or represent him or her, and the Trustee is expressly authorized to pay the fees and costs of the legal counsel from the trust estate.  The time, place, subject matter, and content of any such consultation with legal counsel, *all communication (written or oral) between the Trustee and legal counsel, and all work product of legal counsel* shall be privileged and confidential and *shall be absolutely protected and free from any duty or right of disclosure to any successor Trustee or any beneficiary and any*

11

*duty to account*. The Trustee shall, however, include the amount of any disbursement for the legal counsel fees and costs in any report or account prepared by the Trustee for the period during which the expenses were paid." (Italics added.)

Based on the foregoing analysis of the Trust's terms and the relevant law on the subject, we conclude the portion of paragraph 10.11 that provides that a trustee is "free from any duty or right of disclosure to any successor Trustee" violates public policy as expressed by statute, and is therefore void.

**C. Case Law Regarding Communications between the Trustee and the Trust's Legal Counsel**

The cases Thomas cites in support of his petition actually support our analysis and holding. In *Fiduciary Trust, supra*, 9 Cal.App.5th at page 1192, the interim successor trustee demanded all communications between the suspended and removed trustees and their legal counsel that had been paid for with trust funds. The appellate court concluded "a former trustee is required to turn over all communications, including privileged communications, in the trust's legal files unless they can demonstrate that they retained the counsel with whom they communicated in a personal capacity and took affirmative steps to distinguish the purported personal advice from advice obtained in a fiduciary capacity." (*Id.* at pp. 1197-1198.)

The appellate court concluded its holding was compelled by the Supreme Court's holding in *Moeller v. Superior Court, supra,* 16 Cal.4th 1124: "*Moeller requires* a trustee to take certain affirmative steps to preserve its right to rely upon the attorney-client privilege as the basis for withholding from the successor trustee confidential documents maintained in the trust's legal files. *Moeller* explains these affirmative steps as follows: '[T]he successor trustee inherits the power to assert the privilege only as to those confidential communications that occurred when the predecessor, *in its fiduciary capacity*, sought the attorney's advice *for guidance in administering the trust*. If a predecessor trustee seeks legal advice in its personal

12

capacity out of a genuine concern for possible future charges of breach of fiduciary duty, the predecessor may be able to avoid disclosing the advice to a successor trustee by hiring a separate lawyer and paying for the advice out of its personal funds. . . . [¶] We recognize that the distinction between these two types of confidential trustee-attorney communications—administrative, on the one hand, and defensive, on the other—may not always be clear. Yet *to require a trustee to distinguish, scrupulously and painstakingly, his or her own interests from those of the beneficiaries is entirely consistent with the purpose of a trust*. Moreover, a trustee can mitigate or avoid the problem by retaining and paying out of his or her own funds separate counsel for legal advice that is personal in nature.'" (*Fiduciary Trust, supra*, 9 Cal.App.5th at p. 1199.)

If Thomas did not distinguish his interests from the interests of the beneficiaries of the Trust and instead used the Trust's assets for his own benefit, the documents and other communications relevant to those actions cannot be protected by paragraph 10.11 of the Trust. There is no contention in this case that Thomas retained separate counsel for advice regarding his separate interests or took any other action in that regard.

In *Wells Fargo Bank, supra*, 22 Cal.4th at page 205, the beneficiaries of a trust requested documents from the trustee, Wells Fargo, related to the trust. While Wells Fargo produced documents relating to trust administration, it asserted the attorney-client privilege as to "documents reflecting communications with its attorneys about the [beneficiaries'] claims of misconduct." (*Ibid.*) The Supreme Court concluded that Probate Code section 16060's requirement that a trustee "'keep the beneficiaries of the trust *reasonably informed* of the trust and its administration'" did not require the trustee to provide privileged documents to the beneficiaries. (*Wells Fargo Bank, supra,* at p. 207.) The court found that the Supreme Court's opinion in *Moeller v. Superior Court, supra*, 16 Cal.4th 1124, did not require production of the privileged documents to the beneficiaries, as that case only held that a successor trustee generally assumes the power

13

to assert the attorney-client privilege as to communications between the predecessor trustee and an attorney representing him or her. (*Wells Fargo Bank, supra,* 22 Cal.4th at p. 209.) The challenged order in the present case required Thomas to turn over to the interim co-trustees communications between Thomas as trustee and counsel for Thomas as trustee. The orders specified the communications were not to be provided to the beneficiaries—the Shurtleffs.

Thomas also cites comment a to Restatement Second of Trusts, section 196, in support of his argument. That section provides: "The powers conferred upon a trustee can properly be exercised by his successors, unless it is otherwise provided by the terms of the trust." This rule is continued in Restatement Third of Trusts, section 85(2): "Except as otherwise provided by the terms of the trust, the powers of a trustee . . . pass to and are exercisable by substitute or successor trustees." But the Third Restatement specifically restricts the ability of trustors to limit the trustees' liability for breach of trust: "A provision in the terms of a trust that relieves a trustee of liability for breach of trust, and that was not included in the instrument as a result of the trustee's abuse of a fiduciary or confidential relationship, is enforceable except to the extent that it purports to relieve the trustee [¶] (a) of liability for a breach of trust committed in bad faith or with indifference to the fiduciary duties of the trustee, the terms or purposes of the trust, or the interests of the beneficiaries, or [¶] (b) of accountability for profits derived from a breach of trust." (Rest.3d Trusts, § 96(1).)

### D. Conclusion

"In short, it comes down to the question, what was the intent of the testator as to this matter? His intention, *if in accordance with the law*, is the all controlling factor. What he intended is to be gathered from a consideration of the whole instrument creating the trust, the nature and object of the trust and all other circumstances which have a bearing on the question." (*In re Boutwell's Estate* (Vt. 1941) 22 A.2d 157, 159, italics added, citing Rest.2d Trusts, § 196.)

14

Consistent with public policy, Beverly drafted the Trust to protect the beneficiaries from malfeasance on the part of a trustee. Both in order to prevent such malfeasance and to maintain the effective and consistent operation of the Trust, paragraph 10.11 must be interpreted in a manner that does not permit Thomas to withhold from the Hitchmans—or any other interim or successor trustee—materials covered by the attorney-client privilege and which reflect Thomas's communications with the Trust's legal counsel while he was serving as trustee. As we have explained, there is no contention in this case that Thomas, as trustee, distinguished his own interests from those of the beneficiaries or retained separate counsel for this purpose.

DISPOSITION

The petition for a writ of mandate is denied. Real parties in interest to recover costs in this writ proceeding.

FYBEL, J.

WE CONCUR:

MOORE, ACTING P. J.

THOMPSON, J.

15